**Louis R. and Yvonne M. FREDERICK, Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 78–1853.**

United States Court of Appeals, Eighth Circuit.

Submitted April 20, 1979.

Decided Aug. 8, 1979.

Anthony Ilardi, Jr., Atty., Appellate Section, Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellant; M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Carlton D. Powell, Attys., Washington, D. C., and James R. Britton, U. S. Atty., Fargo, N. D., on briefs.

Garry A. Pearson, of Pearson & Christensen, Grand Forks, N. D., on brief, for appellees.

Albert R. Hausauer, Special Asst. Atty., State Tax Com'r, Bismarck, N. D., filed brief for amicus curiae, Tax Com'r.

Paul S. Berger, Robert J. Jones and Thomas C. Spring, Bldg. and Const. Trades Dept., AFL–CIO, Washington, D. C., filed brief for amicus curiae, Bldg. & Const. Trades Dept., AFL–CIO.

Before LAY, HEANEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

The United States appeals from a decision of the District Court allowing Louis R. Frederick [1] to deduct the transportation expenses he incurred between his home and his place of work pursuant to § 162(a) of the Internal Revenue Code. It argues that the District Court erred in determining that Frederick's employment was for a temporary rather than an indefinite period. We hold that the District Court's finding was not clearly erroneous and affirm.

Frederick, a carpenter, is a resident of Belcourt, North Dakota. On May 22, 1970, he began work on an anti-ballistic missile project in Nekoma, North Dakota, a town eighty-one miles from Belcourt. The missile site was to be part of the "Safeguard System," a strategic system of anti-ballistic missile installations to be located throughout the United States. Frederick worked at the site continuously until May 25, 1973, when the carpentry work was substantially completed.

Except for the first few days when he slept in his car, Frederick drove back and forth daily between Belcourt and Nekoma, a round trip distance of one hundred and sixty-two miles. On his 1971 and 1972 returns, he deducted his mileage expenses for deductions of $1,011 and $987, respectively.[2] The Commissioner of Internal Revenue disallowed these deductions and assessed deficiencies totaling $1,282.32. Frederick paid the assessed amount and, after his claims for a refund had been disallowed, brought this action. The District Court, after a nonjury trial, found that Frederick's employment was temporary and, consequently, that he was entitled to deduct the expenses.[3]

The costs of traveling back and forth to work are deductible only if they

---

1. Yvonne M. Frederick, Frederick's wife, is also a party to this action because joint returns were filed.

2. The deductions represented the claimed deduction based on the per mile allowance less a per diem payment of $8.00, which Frederick received while he worked on the project.

3. The District Court's opinion is found at 457 F.Supp. 1274 (D.N.D.1978). This case was tried with *Ingolf G. and Judith Simley v. United States, supra.* Simley was a construction worker at the project site. He claimed deductions for the cost of meals and lodging under § 162(a)(2) of the Internal Revenue Code. The District Court concluded that Simley was entitled to deduct his expenses but entered judg-

qualify as "ordinary and necessary" business expenses under § 162(a). *See United States v. Tauferner,* 407 F.2d 243 (10th Cir.), *cert. denied,* 396 U.S. 824, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969). Usually, such costs are not deductible because they constitute personal expenses under § 262. *Sanders v. C. I. R.,* 439 F.2d 296, 297 (9th Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 55, 30 L.Ed.2d 108 (1971). To determine whether such transportation costs constitute deductible business expenses or nondeductible personal expenses, the courts have utilized the "temporary or indefinite" test developed under § 162(a)(2).[4] *Boone v. United States,* 482 F.2d 417, 419 (5th Cir. 1973); *see Sanders v. C. I. R., supra.* We have adopted the test as follows:

> "Where it appears probable that a taxpayer's employment outside the area of his regular abode will be for a 'temporary' or 'short' period of time, then his travel expenses are held to be deductible; conversely, if the prospects are that his work will continue for an 'indefinite' or 'intermediate' or 'substantially long' period, then the deduction is disallowed."

*Cockrell v. C. I. R.,* 321 F.2d 504, 507 (8th Cir. 1963), *quoting Wright v. Hartsell,* 305 F.2d 221, 224 (9th Cir. 1962). *See also Jenkins v. C. I. R.,* 418 F.2d 1292 (8th Cir. 1969).

Within the context of a § 162(a)(2) deduction, the temporary or indefinite test represents a gloss on the "pursuit of business" requirement of *Commissioner v. Flowers,* 326 U.S. 465, 470, 66 S.Ct. 250, 90 L.Ed. 203 (1946). *See Peurifoy v. Commissioner,* 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958). In *Flowers,* the Supreme Court held that travel expenses must meet three requirements before they could be deducted. One of these requirements is that

[t]he expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

326 U.S. at 470, 66 S.Ct. at 252.

Applying this test to the facts in *Flowers,* the Supreme Court concluded that the evidence clearly supported the conclusion that the expenses in issue were not incurred in pursuit of business.

*Flowers* was a lawyer who resided with his family in Jackson, Mississippi. He was elected general counsel of a railroad which had its main office in Mobile, Alabama, from 1930 to 1940. Although his principal post of business was at the railroad's main office, he continued to reside in Jackson. He sought to deduct the expenses incurred in making trips from Jackson to Mobile and the expenses for meals and hotel accommodations in Mobile. The Commissioner disallowed the deductions. In sustaining the Commissioner's actions, the Court noted that there were no business justifications for the taxpayer living in Jackson when his principal post of duty was in Mobile. Rather, the additional expenses were incurred solely as the result of his decision to live in Jackson while working in Mobile. Since his choice of a residence was a matter of personal convenience, the expenses constituted commuting expenses and were not deductible.

■ The temporary or indefinite test represents a refinement of this analysis. Where a taxpayer reasonably expects to be employed in a location for a substantial or indefinite period of time, the reasonable

---

ment against him because he failed to substantiate his deductions. Simley has not appealed. The government has not questioned either the amount of Frederick's expenses or the fact that they were incurred.

4. Section 162(a)(2) provides:

(a) *In general.* There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business [.]

inference is that his choice of a residence is a personal decision, unrelated to any business necessity. Thus, it is irrelevant how far he travels to work. *See Commissioner v. Flowers, supra* at 473, 66 S.Ct. 250. The normal expectation, however, is that the taxpayer will choose to live near his place of employment. Consequently, when a taxpayer reasonable expects to be employed in a location for only a short or temporary period of time and travels a considerable distance to the location from his residence, it is unreasonable to assume that his choice of a residence is dictated by personal convenience. The reasonable inference is that he is temporarily making these travels because of a business necessity. *See Rosenspan v. United States,* 438 F.2d 905, 912 (2d Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971).

The temporary or indefinite test serves a similar function in the § 162(a) context in attempting to discern whether transportation expenses were incurred for a business purpose rather than a personal one. The underlying premise in both situations is the idea that a taxpayer's choice of a residence is circumscribed by his expected term of employment. A taxpayer has considerable discretion in determining where he wants to live when he will be employed in a location for a substantial or indefinite period of time. This discretion is severely limited or nonexistent when a taxpayer will be employed for only a short or temporary period

of time. Thus, the choice of a residence is a personal decision in the first situation, and a business decision in the latter.[5]

■ Frederick argues that we should abandon the temporary or indefinite test in favor of a new test which would make deductibility dependent upon whether it is reasonable for the taxpayer to move his home to the job site. *See Markey v. C. I. R.,* 490 F.2d 1249 (6th Cir. 1974); *Six v. United States,* 450 F.2d 66 (2d Cir. 1971); *Rosenspan v. United States, supra.* We decline to do so. In practice, the two tests may often give the same result since it would usually be unreasonable for a taxpayer not to move his home to his job site if his employment was for a substantial or indefinite time period. The suggested test, however, improperly focuses attention on the taxpayer's particular living conditions. As we noted in *Cockrell v. C. I. R., supra* at 507, *quoting Carragan v. Commissioner of Internal Revenue,* 197 F.2d 246, 249 (2d Cir. 1952), " 'The job, not the taxpayer's pattern of living,' is the crucial matter."

■ The United States argues, initially, that the deduction should be disallowed as a matter of law since it was clear that the missile project would continue for a substantial period of time.[6] In our view, the government's argument misses the point. The relevant fact is the taxpayer's prospects for continued employment. *See, e. g.,*

---

**5.** Much of the confusion in applying the test stems from the attempt to relate it to the second requirement of *Commissioner v. Flowers,* 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the requirement that the expense must be incurred "while away from home." The Commissioner, in effectuating this requirement, has developed the idea of a "tax home," which means that a taxpayer's home is generally held to be at his principal place of business. The temporary or indefinite test is viewed as an extension of this rule. The Commissioner reasons that a taxpayer, who is only temporarily employed at a business location, has not "moved" his tax home, provided he can show that his tax home is elsewhere. *See* Rev.Rul. 60-189, 1960–1 Cum.Bull. 60.

As the District Court correctly recognized, the expenses are deductible only under § 162(a) because § 162(a)(2) does not apply to trips that do not require rest or sleep. *United States v.*

*Correll,* 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). There is no such "away from home" requirement under § 162(a) and, thus, we need not involve ourselves with the question of Frederick's tax home. The focus of our inquiry is on whether the transportation expenses were ordinary and necessary business expenses.

**6.** The record is not clear that the missile project would continue for a substantial period of time. To the contrary, the record reveals that the government and the contractor refused to build housing and eating facilities because the project might be cancelled at any time. Housing was simply unavailable. Many workers had to sleep on cots that were set up at night in basements and in business establishments. Schools were overcrowded and eating establishments had long lines.

*Boone v. United States, supra* at 420; *Cockrell v. Commissioner, supra* at 507. The Commissioner has recognized this on prior occasions:

> How long a project as a whole may be expected to last, unless it is for a short time, is usually of no particular significance. The probable duration of the particular phase of the project on which the taxpayer expects to be engaged is an evidentiary fact to be weighed, but even that fact is not necessarily determinative. For example, if it were a known fact that the welding work on a large construction project could be expected to last over two years, it would not necessarily follow that every welder who works on the project expects to remain working there that long.

Rev.Rul. 60–189, 1960–1 Cum.Bull. 60, 64.

■ The government also argues that the deduction should be disallowed as a matter of law since Frederick actually worked on the project for a substantial period. This fact is not determinative of the issue. *Cockrell* demands that a court investigate the taxpayer's prospects of continued employment. In other words, a court must evaluate those facts available to a taxpayer at a point in time and determine, in light of those facts, whether future employment was for a temporary or indefinite period. The determination of whether a job is temporary or indefinite is a factual question, and a court must examine all the facts and circumstances in reaching its conclusion. *See, e. g., Peurifoy v. Commissioner, supra; Tucker v. Commissioner,* 55 T.C. 783, 786 (1971). The government's approach that one or two factors preclude deductibility as a matter of law would effectively foreclose this inquiry.

■ Thus, our function on appeal is to decide whether the District Court's finding that Frederick's employment was temporary is clearly erroneous. *See* Fed.R.Civ.P. 52(a). We conclude that it is not.

The construction of the missile site at Nekoma, North Dakota, was unique in many ways. Ten such sites were authorized in late 1969, but their actual construction depended on the progress of the Strategic Arms Limitation Talks. Construction actually began at only three of the sites, located in Nekoma, Boston, Massachusetts and Great Falls, Montana. The Great Falls project was cancelled by the government in July, 1972, after only several months of construction. The Boston project was halted after a construction hole was dug. Only the Nekoma site was completed. The site was activated on October 1, 1974, at a total cost of $500 million and deactivated on October 2, 1974, one day later. From the start of the project, rumors abounded that construction would be completely shut down for the reasons previously stated. Thus, there was no assurance throughout the entire life of the project that it would be completed and placed in operation.

After Frederick was hired, he was moved from crew to crew as needed. He expected to be laid off when winter came. Only indoor construction work was possible at the Nekoma project because of the harsh and lengthy North Dakota winters. The workers knew that employment at the project was seasonal and that all but a few of the carpenters would be laid off during the winter. In fact, over eighty percent of the carpenters were laid off the first winter, and over fifty percent were laid off the following two winters. Even if a worker was retained over one winter, this did not affect his prospects of being laid off the next winter. The winter crew consisted of one worker from each of the summer crews. The makeup of the summer crews, and thus the competition for a place on the winter crew, was constantly changing. Although Frederick was retained during the winter months, there was no assurance that he would be. He was the only man in his entire crew of fifteen to twenty people that remained on for the winter.

■ We recognize that temporary work stoppages standing alone will not make indefinite work temporary. *See Blatnick v. Commissioner,* 56 T.C. 1344 (1971). Here, however, winter layoffs lasted a minimum of three months and there was no probability that those who were laid off would be rehired the next year.

Layoffs were also caused by the 17,000 to 18,000 change orders, or changes in plans, which were made on the Nekoma project. When a change order was issued to move a wall, for instance, the workers building the wall would be laid off. A worker who was laid off would be placed at the bottom of his union's job referral list. Referral, when made, was to the first available job, which might not have been the Nekoma project. Thus, there was a probability that a worker would be laid off at some time during the year and not rehired for the project.

Given these factors, the District Court's finding that throughout Frederick's employment, it was likely that his employment, from any given time, would last only a short time longer is not clearly erroneous.

The judgment of the District Court is affirmed.