**Glenn E. JOHNSON and Barbara Johnson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CV81–L–184.**

United States District Court, D. Nebraska.

Feb. 4, 1983.

---

Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., Lincoln, Neb., for plaintiffs.

Richard H. Gregory, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

URBOM, Chief Judge.

Glenn E. Johnson and Barbara Johnson have brought this action to recover taxes and interest which they contend the Internal Revenue Service erroneously or illegally assessed. Count I concerns the plaintiffs' 1977 tax return, Count II the 1978 return. In both years the plaintiffs claimed certain business deductions which the IRS disallowed. The plaintiffs paid the deficiencies which the IRS assessed, filed timely claims for refunds, and brought this lawsuit under 26 U.S.C. § 7422 after their claims were rejected. This court has jurisdiction under 28 U.S.C. § 1346(a)(1). The parties agreed to submit the case to the court on the basis of stipulated facts.

Glenn Johnson has been a journeyman electrician and a member of Local No. 265, International Brotherhood of Electrical Workers, in Lincoln, Nebraska, since 1963. Except for a six-year tour of duty with the Navy, Johnson has lived in Lincoln. He divorced his first wife in 1975, but his two children from that marriage continued to live in Lincoln. During the years in question here, he had visitation privileges every other weekend. On July 22, 1978, he married Barbara Johnson, who worked in Lincoln and whose children attended school in Lincoln. The stipulated facts are that the plaintiffs attended church, voted, banked, and paid property taxes in Lincoln during 1977 and 1978.

Johnson's local union often assigned him to job sites outside of Lincoln. On December 14, 1976, the union referred him to a job at the construction site of a power plant near St. Marys, Kansas. Construction of the plant's first unit started in 1974 and work on the third and final unit is still underway in accordance with the construction schedule. All phases of construction required electrical work, but the need for electricians on the project at any specific time varied greatly, depending on the phase of construction. Johnson worked on Unit 1

from December 14, 1976, until March 25, 1977, when his union asked him to take a job at Nebraska City, Nebraska. This site was within the union's area of jurisdiction, while St. Marys was not. Johnson complied.

While he worked at the power plant Johnson stayed at a motel in St. Marys, ten miles from the job site. He made 56 round trips between the motel and the plant. He also made twelve round trips of 350 miles each between St. Marys and Lincoln in order to attend a medical clinic and to see his family. Johnson claimed these trips, which totaled 5,320 miles, as travel expense deductions. He also claimed a deduction for the meals and lodging expenses he incurred while he was in St. Marys. The IRS allowed a deduction for meals and lodging but not for travel.

Pursuant to his union's request, Johnson began work on Monday, March 28, 1977, for the Lord Electric Company in the construction of a power plant at Nebraska City. He was fired by Lord Electric on Friday, September 30, 1977, and the union immediately referred him to another job with a different company on the same project. He began work with Commonwealth Electric Company on October 3, 1977, and worked for that company until August 18, 1978, when he quit to take a better paying job with Newtron, Inc. on the same power plant project. He began that job on Monday, August 21, 1978, and continued until Newtron completed its work in May 1979. The power plant, however, was not completed until December 1979.

As with the St. Marys project, the Nebraska City plant required varying amounts of electrical work throughout its construction. During the time Johnson worked at the Nebraska City project he spent every night in Lincoln. Until July 21, 1978, the round trip between his house in Lincoln and the project site was 128 miles; on July 22, 1978, he moved to southeast Lincoln and reduced his round trip to 115 miles. During 1977, he claimed a deduction for 177 round trips totaling 22,656 miles; during 1978, he claimed a deduction for a total of 28,498 miles. The IRS denied these deductions. The parties have stipulated, however, that a deduction should be allowed for $69.00 Johnson paid in ad valorem personal property taxes on the car he drove to the job sites.

■ As the taxpayer, Johnson must prove that his expenditures were deductible. *M.F.A. Central Cooperative v. Bookwalter,* 427 F.2d 1341, 1343 (C.A. 8th Cir. 1970); *Berhow v. United States,* 279 F.Supp. 737, 739 (D.Neb.1968). In 26 U.S.C. § 162, the Internal Revenue Code says:

> "(a) In general—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including . . .

> (2) traveling expenses . . . while away from home in the pursuit of a trade or business."

Although Johnson's trips from Lincoln to St. Marys, St. Marys to the job site, and Lincoln to Nebraska City would all seem to be traveling expenses under § 162(a)(2), some of those trips are deductible only under § 162(a). Section 162(a)(2) does not apply to trips that do not require rest or sleep—i.e., an overnight stay. *United States v. Correll,* 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). Therefore, Johnson's daily trips between Lincoln and Nebraska City could be deducted only if they are "ordinary and necessary" business expenses under § 162(a). *Frederick v. United States,* 603 F.2d 1292, 1293–1294 (C.A. 8th Cir. 1979). Usually, the costs of traveling to and from work are not deductible, because they are personal expenses. *Id.* The trips from Lincoln to St. Marys, however, involved overnight stays, and they must be considered under § 162(a)(2).

■ Although those two subsections impose different requirements on a taxpayer, the issues they present in this case can be resolved by a single test.

> " 'Where it appears probable that a taxpayer's employment outside the area of his regular abode will be for a "temporary" or "short" period of time, then his travel expenses are held to be deductible;

conversely, if the prospects are that his work will continue for an "indefinite" or "substantially long" period, then the deduction is disallowed.' " *Frederick v. United States,* supra, at 1294.

When this test is used for claims under § 162(a)(2), it determines whether the taxpayer was "away from home" and whether the expense was incurred "in pursuit of trade." *Cockrell v. Commissioner of Internal Revenue,* 321 F.2d 504, 507 (C.A. 8th Cir.1963). A deduction under this subsection must satisfy both of those criteria. *Commissioner v. Flowers,* 326 U.S. 465, 470, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946). The test works on the simple presumption that if a taxpayer is assigned for a long period of time to a job location that is a long distance from his home, ordinarily he will move closer to his work; if he does not, the choice to commute great distances is a personal one. If, however, the job assignment is only temporary or for a short period of time, he cannot be expected to uproot himself and his family; therefore, his travel to and from work is made in pursuit of business. *Frederick,* supra, at 1294. Furthermore, his travel is "away from home." If the job is a permanent one, the taxpayer would ordinarily move to the new job site, but if he does not, his "tax home" does. A tax home is where one has his principal place of duty and an abode while pursuing that duty, not where one merely claims one's residence is. *Cockrell,* supra, at 507. In short, two criteria need to be met under § 162(a)(2), and the "temporary or indefinite" test determines both of them.

The "temporary or indefinite" test is also used to determine whether a deduction is proper under § 162(a). *Frederick,* supra, at 1294. The test establishes whether an expense is an ordinary and necessary business expense under § 162(a) in the same way it establishes whether an expense is made in pursuit of business under § 162(a)(2). Unfortunately, because this test, when used for § 162(a)(2) purposes, also concerns that subsection's "away from home" requirement, it is easy to impose erroneously the same "away from home" requirements on § 162(a) deductions. Section 162(a), how-

ever, does not have such a requirement. As the *Frederick* court observed, there has been considerable confusion on this point, 603 F.2d at 1295, n. 5, and some confusion has crept into the briefs in this case.

■ With those considerations in mind, I turn to Johnson's trips between Lincoln and St. Marys. The St. Marys project has lasted from 1974 until the present, and while the length of the entire project is not of great significance, *Frederick,* supra, at 1296. I.R.S.Rev.Rul. 60–189, 1960–61 Cum. Bull. 60, 64, Johnson knew that electricians would be required through all phases of construction. It is true that not as many electricians would be needed during some phases of construction, but the record contains no evidence which shows that Johnson probably would be laid off during those phases. Cf. *Frederick,* supra, at 1296 (taxpayer's deduction allowed when he shows that under a project's construction schedule and seniority system he probably would be laid off at certain times). The record does show that St. Marys is outside the jurisdiction of Johnson's local union. Presumably, Johnson's union would ask him to return to Nebraska as soon as jobs were available in Nebraska, and the Kansas local union probably would ask Johnson to leave if its own members needed jobs at St. Marys. However, even if these presumptions were proved to be true, they would not be sufficient. *Kasun v. United States,* 671 F.2d 1059, 1062 (C.A. 7th Cir.1982). In that case the court observed that nobody knew when jobs would become available in the taxpayer's own area and so it assumed that he would continue to work at a site under another union's jurisdiction; that made his travel employment at the job site of "indefinite" duration, so his travel expenses between home and work were not deductible. I agree. It is true that Johnson could not reasonably have been expected to move to St. Marys, but that is not the proper test. *Id.; Frederick,* supra, at 1295. The correct test clearly says that expenses are not deductible if the employment is of indefinite duration, *Frederick,* at 1294, and here the job was indefinite.

Johnson opposes this conclusion for several reasons. He argues, first, that the IRS already has determined that he was away from his home while he was in St. Marys, because it allowed him to deduct his meals and lodging expenses while he was in St. Marys. Assuming that this determination also can be applied to the travel expenses in question, it still does not justify a deduction, because it would satisfy only the "away from home" requirement of § 162(a)(2). It would not satisfy that subsection's "pursuit of business" requirement, which is controlled by the "temporary or indefinite" test. Second, Johnson argues that he expected his work at St. Marys to be temporary, because all of his other jobs outside the union's area of jurisdiction had been for short periods of time. The causal link between the length of past jobs and the expected length of this job is weak. Perhaps in the past Johnson was able to return quickly to Nebraska because jobs frequently became available there, but that does not show that when Johnson took the St. Marys job in December 1976 he had any reason to expect that he would soon be recalled to Nebraska. Finally, he argues that he worked at St. Marys for only three months. But the fact that an employment at a particular place is actually of short duration is not a sufficient reason to consider it temporary. I.R.S.Rev.Rul. 60–189, 1960–61 Cum. Bull. 60, 63.

■ I turn next to Johnson's claimed deductions for mileage between his motel in St. Marys and the job site. He made the round trip each day, so any deduction would be under § 162(a). Johnson has not presented any reasons in his brief why these daily trips were not commuting expenses, which are not deductible. *Frederick,* supra, 603 F.2d at 1294. Consequently, I shall not allow the deduction for them.

■ As to Johnson's trips between Lincoln and Nebraska City, he made those trips every day; therefore, they cannot be deducted under § 162(a)(2), which applies only to trips requiring sleep or rest. *Id.,* at 1295, n. 5. The IRS argues that since Nebraska City was within the jurisdiction of Johnson's local union, his trips to and from that city did not incur expenses "away from home," as required by § 162(a)(2). As noted above, § 162(a) does not contain an "away from home" requirement. Nevertheless, Johnson's expenses are not deductible. He worked at the Nebraska City construction site from March 1977 until May 1979, and an employment or stay of a year or more strongly indicates that the employment is for a "substantial" period of time. I.R.S.Rev.Rul. 60–189, 1960–61 Cum.Bull. 60, 63. Nothing in the record indicates that when he took the job he had any reason to believe it would be for only a short period of time. The area was within the jurisdiction of his union, the project was scheduled to last for several years, and electricians would be needed in varying numbers all during construction. Johnson has not submitted any evidence which shows that he would expect to be laid off during any lulls in the need for electricians. The fact that he worked for three different companies at the job site is immaterial, because *Frederick* speaks of employment prospects at a particular location, not with a particular employer. In short, after considering all of the circumstances, I conclude that Johnson's employment prospects at the Nebraska City site were for an "indefinite" or "substantially long" period of time. His deduction should not be allowed under § 162(a).

The parties have indicated that after I determine the issues in this case, they will confer and attempt to agree upon a judgment for submission to the court. Although I am affirming the defendant's decision to deny Johnson's refund claims and my decision would not seem to require a recalculation of Johnson's tax liabilities, the parties have stipulated that Johnson is entitled to a deduction for ad valorem personal property taxes on an automobile he used to drive to and from work and for general transportation purposes. Since the record contains no evidence and the briefs contain no argument on what percentage of those taxes Johnson should be allowed to deduct, and because this deduction will require a recomputation of his tax liability, I shall

give the parties time to submit a proposed form of judgment.

IT THEREFORE IS ORDERED that the parties shall have until February 24, 1983, to submit a proposed form of judgment, consistent with this memorandum and the stipulation of the parties.