ROBERT F. AND PATRICIA E. SCHURWAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schurwan v. Commissioner
Docket No. 19114-82.
United States Tax Court
T.C. Memo 1983-699; 1983 Tax Ct. Memo LEXIS 97; 47 T.C.M. (CCH) 395; T.C.M. (RIA) 83699; November 23, 1983. John J. Vassen and Patrick B. Mathis, for the petitioners. Michael J. Cooper and James A. Kutten, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181. [2] The Court agrees with and adopts his opinion which is set forth below. *98 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $1,958.00. After concessions by the parties, the sole issue for decision is whether under section 162(a) petitioners are entitled to deduct petitioner-husband's costs of traveling between his residence and place of work. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Florissant, Missouri, when their petition in this case was filed.
Petitioner Robert F. Schurwan (petitioner) is an insulator and a member of Local #1, International Association of Heat and Frost Insulators and Asbestos Workers (union). Prior to joining the union in August 1982, petititoner had been classified as a "permit worker." [3] As such, he was subject to being "bumped" from his job by union members seeking work.
*99 Petitioner was employed on several occasions by Daniel International Corporation (Daniel) as an insulator at the Callaway Nuclear Power Plant project (Callaway). Callaway is a major project being built by Union Electric Company (UEC). The site was located near Fulton, Missouri, approximately 100 miles from each of petitioners' two residences during 1980. [4]
Petitioner was first employed by Daniel in October 1977. After working for approximately six months, he was laid off pursuant to a reduction of force. On March 5, 1979, petitioner was rehired and worked until March 21, 1979 when he was laid off due to a reduction in force. The critical period in this case began on March 26, 1979 when petitioner was again rehired by Daniel. He worked until April 14, 1981. Except for two brief periods when petitioner was laid off due to work stoppages by other crafts, [5] this period of employment by Daniel at Callaway lasted in excess of two years. On July 31, 1980, Daniel's personnel office advised a savings and loan association with respect to a credit application that petitioner's *100 probability of continued employment was good. The original plan for Callaway was to build two nuclear powered generating units (Units 1 and 2). Daniel was the general contractor for the entire project, with the exception of the main cooling tower. Construction of Callaway began in late 1975 with ground breaking and site preparation work. At that time, Unit 1 was scheduled to be completed by October 1981 and Unit 2 by April 1983. Due to a number of unforeseen problems, the estimated completion dates were extended on several occasions. In 1978 the estimated completion date was October 1982 for Unit 1 and April 1987 for Unit 2. These revisions were generally made public by UEC through various press releases and news conferences. In 1981, plans for the construction of Unit 2 were cancelled. This had no effect on Unit 1's estimated completion date. At the time of trial, construction of Unit 1 had not been completed. A referendum, "Proposition 11", was defeated in Missouri on November 4, 1980. If successful, the referendum would have prevented *101 the operation of a nuclear power plant within Missouri until a permanent disposal site for radioactive waste could be approved by the Federal government. Even if the proposition passed, UEC intended to continue construction at Callaway. The proposition had no effect on the construction of Unit 1 or on the estimated completion date of Unit 1. Insulators at the Callaway project were hired by Daniels pursuant to an agreement with the union. Based on work requirements, an employee of Daniel would prepare a manpower request for a certain number of workers. The necessary insulators would be supplied from the union's referral list. [6] The decision to lay off a particular insulator due to a reduction of force at Callaway was solely within the discretion of Daniel. The pertinent *102 period of petitioner's employment by Daniel began on March 26, 1979. He was given no indication of how long employment would be available by Daniel, although one union official said it might last a couple of months.At that time Unit 1 was less than 40 percent complete and did not reach near that stage of completion until about November 5, 1979. A worker, such as petitioner, was required to attend an orientation lecture about Callaway each time he was hired by Daniel. During the lecture, the worker was informed of the then estimated time of completion. During 1980, Daniel had a substantial need for insulators. In addition to significant amounts of work on temporary facilities, insulation work was required in buildings for which Daniel was responsible. Such work was not seasonal in nature. A person in petitioner's craft could reasonably expect to remain employed for as long as work remained available and he maintained a good work record. Although the number of insulators at Callaway fluctuated in 1980, [7] the prospects for continued employment for a good worker were substantial throughout 1980. *103 The parties introduced two joint exhibits containing figures showing the total number of insulators employed at Callaway, one apparently as of each given Tuesday and the other on a weekly basis. From the time petitioner was hired on March 26, 1979, both exhibits show a pattern of increasing need for insulators at the site until mid-August 1979 by which time a substantial number were employed. Thereafter, there were fluctuations in the upper ranges of total employment of insulators and on two short occasions there were drastic reductions in force of insulators due to work stoppages by other crafts. Petitioner was one of those laid off due to work stoppages by the other crafts. None of the fluctuations in the upper ranges of total employment affected petitioner's employment nor his prospects of employment. Petitioner was employed by Daniel for more than two years after March 26, 1979, whith the two brief breaks described above, despite the fluctuations at the upper ranges of total employment of insulators. Daniel was obviously satisfied with his performance. Petitioner's March 21, 1979 layoff slip had noted that he was a good worker, had good attendance, and that he should be *104 rehired when possible. He was rehired one week later. He was also promoted to forman on November 20, 1980. Petitioner was in the group of Daniel employees at Callaway who could expect to remain employed throughout 1980. At the time of trial, petitioner was still working at Callaway although for a different contractor. On their 1980 return, petitioners claimed an ajustment to income for employee business expenses in the amount of $6,509.00. There is no dispute that this amount represents the costs incurred by petitioner in commuting by automobile between his residence and the Callaway site. Respondent disallowed the claimed adjustment in full. OPINION The essential facts herein do not differ from those in Van Horn v. Commissioner,T.C. Memo. 1983-693, [8] issued on the same day this opinion was issued, although there are some differences in the detail. The most significant difference is that petitioner was hired on March 26, 1979 after a one-week layoff from a job lasting only two weeks. Whatever his status was when petitioner began the critical period of work for Daniel at Callaway, there is no question but that by January 1, 1980, his prospects for continued *105 employment for an indefinite period were excellent. Frederick v. United States,603 F.2d 1292 (8th Cir. 1979); Norwood v. Commissioner,66 T.C. 467 (1976); Kroll v. Commissioner,49 T.C. 557 (1968). We are satisfied for the reasons set forth in Van Horn v. Commissioner,supra, that petitioner's employment during 1980 was indefinite, and not temporary. Accordingly, respondent's disallowance of the claimed automobile expense must be sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that rule are not applicable in this case.↩
3. Although the stipulation of facts states that petitioner was a member of the union during the year in question, the testimony of petitioner was to the contrary. Since we do not deem this fact critical, we have based our findings as to union membership on that testimony. Rule 91(e).↩
4. Petitioners resided in St. Louis, Missouri, until October 1980 at which time they moved to Florissant.↩
5. The first period was the three weeks from April 7, 1980 to April 28, 1980 and the second was from May 28, 1980 to June 4, 1980.↩
6. During the period 1976 through 1981, the union found that its members were almost all fully employed in various projects within its jurisdiction, causing it to allow permit workers to satisfy the demands of various employers. The number of union insulators employed during that period ranged from a low of 298 to a high of 320. The number of insulators employed as permit workers ranged from 241 to 370.↩
7. Fluctuations were the result of various factors such as voluntary quits, no-shows, firing due to violation of project rules, reductions in force due to the needs of the employer, and work stoppages by other crafts.↩
8. The instant case was consolidated for trial and briefing with that case and one other case and for trial with two other cases with respect to common witnesses.↩