CLARENCE E. AND SHIRLEY A. MYERS, Petitioners v. COMMISSIONER OR INTERNAL REVENUE, Respondent
Myers v. Commissioner
Docket No. 19345-82.
United States Tax Court
T.C. Memo 1983-696; 1983 Tax Ct. Memo LEXIS 94; 47 T.C.M. (CCH) 389; T.C.M. (RIA) 83696; November 23, 1983. Clarence E. Myers, pro se. Michael J. Cooper and James A. Kutten, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181. [2] The Court agrees with and adopts his opinion which is set forth below. *95 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' 1979 Federal income tax in the amount of $743.00. After a concession by petitioners, the sole issue for decision is whether petitioner-husband's employment at the construction site of a nuclear power plant was temporary or indefinite. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Bridgeton, Missouri, when their petition in this case was filed. Petitioner Clarence E. Myers (petitioner) is an ironworker and was a member of Local No. 396, Ironworkers Union (union) during the year in issue. Petitioner was employed by Daniel International Corporation (Daniel) as an ironworker at the Callaway Nuclear Power Plant Project (Callaway). Callaway is a major project being built by Union Electric Company (UEC). The site was located near Fulton, Missouri, approximately 106 miles from petitioners' residence in Bridgeton, Missouri. Petitioner was first employed by Daniel on June 14, 1978. He remained in Daniel's continuous *96 employ until March 6, 1981, except for about five weeks from May 30, 1980 to July 8, 1980 when he was laid off due to a reduction in force. The original plan for Callaway was to build two nuclear powered generating units (Units 1 and 2). Daniel was the general contractor for the entire project, with the exception of the main cooling tower. Construction of Callaway began in late 1975 with ground breaking and site preparation work. At that time, Unit 1 was scheduled to be completed by October 1981 and Unit 2 by April 1983. Due to a number of unforeseen problems, the estimated completion dates were extended on several occasions. In 1978 the estimated completion date was October 1982 for Unit 1 and April 1987 for Unit 2. These revisions were generally made public by UEC through various press releases and news conferences. In 1981, plans for the construction of Unit 2 were cancelled. This had no effect on Unit 1's estimated completion date. At the time of trial, construction on Unit 1 had not been completed. A referendum, "Proposition 11", was defeated in Missouri on November 4, 1980. If successful, the referendum would have prevented the operation of a nuclear power plant *97 within Missouri until a permanent disposal site for radioactive waste could be approved by the Federal government. Even if the proposition passed, UEC intended to continue construction at Callaway. The proposition had no effect on the construction of Unit 1 or on the estimated completion date of Unit 1. Ironworkers at the Callaway project were hired by Daniel pursuant to an agreement with the union. Based on work requirements, an employee of Daniel would prepare a manpower request for a certain number of workers. The necessary ironworkers would be supplied from the union's referral list. The decision to lay off a particular ironworker due to a reduction of force at Callaway was solely within the discretion of Daniel. When petitioner was hired on June 14, 1978, he was given no indication of how long employment would be available. At that time Unit 1 was less than 40 percent complete and did not reach near that stage of completion until about November 5, 1979. A worker, such as petitioner, was required to attend an orientation lecture about Callaway each time he was hired by Deniel. During the lecture, the worker was informed of the then estimated time of completion. *98 During 1979, Daniel had a substantial need for ironworkers. Ironwork was required in buildings for which Daniel was responsible. Such work was not seasonal in nature. A person in petitioner's craft could reasonably expect to remain employed for as long as work remained available and he maintained a good work record. Although the number of ironwrokers at Callaway fluctuated in 1979, [3] the prospects for continued employment for a good worker were substantial through 1979. The number of ironworkers employed by Daniel during 1979 ranged between 215 and 424. None of these fluctuations at the upper ranges of employment affected petitioner's employment nor his prospects of employment. His employment with Daniel ended on March 6, 1981, when he voluntarily resigned for medical reasons. Prior to his resignation, Daniel had been satisfied with his performance. Petitioner had served as a foreman on several occasions during his tenure at Callaway. Petitioner was *99 in the group of employees who could expect to remain employed throughout 1979. Petitioners claimed an adjustment to income on their 1979 return for employee business expenses in the amount of $2,677.00. This amount represents the costs of meals and lodging incurred by petitioner in maintaining living accommodations in a rental apartment near Callaway. Prior to and during the year in issue, petitioner stayed at that apartment during the work week. Petitioners continued to maintain their abode in Bridgeton, Missouri, for personal reasons. Respondent disallowed the claimed adjustment in full. OPINION The essential facts herein are similar to those in VanHorn v. Commissioner,T.C. Memo. 1983-693, issued on the same day this opinion was issued, although there are some differences in the detail. [4] The most significant difference is that the petitioner claims a deduction under section 162(a)(2) for his meals and lodging while at Callaway away from his family home in Bridgeton, Missouri, whereas petitioner in VanHorn was attempting to deduct travel expenses under the general provision of section 162(a). [5] However, the temporary or indefinite test *100 with respect to employment, which controls our decisions in both VanHorn and the present case, serves the same function under both section 162(a) and section 162(a)(2). Frederick v. United States,603 F.2d 1292, 1294-1295 (8th Cir. 1979). [6]
*101 Whatever his status was when petitioner began working for Daniel at Callaway, there is no question but that by January 1, 1979, his prospects for continued employment for an indefinite period were excellent. Frederick v. United States,supra;Norwood v. Commissioner,66 T.C. 467 (1976); Kroll v. Commissioner,49 T.C. 557 (1968). In this case we find that petitioner worked for Daniel from June 14, 1978 to March 6, 1981, except for about five weeks in 1980 when he was laid off due to a reduction in force. Such a temporary work stoppage standing alone will not make indefinite work temporary. Frederick v. Commissioner,supra at 1296; Blatnick v. Commissioner,56 T.C. 1344 (1971). We are satisfied for the reasons set forth in VanHorn v. Commissioner,supra, that petitioner's employment during 1979 was indefinite, and not temporary. Accordingly, respondent's disallowance of the claimed adjustment for employee business expenses must be sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that rule are not applicable in this case.↩
3. Fluctuations were the result of various factors such as voluntary quits, no-shows, firing due to violation of project rules, reductions in force due to the needs of the employer, and work stoppages by other crafts.↩
4. The instant case was consolidated for trial with that case and three other cases with respect to common witnesses. ↩
5. Section 162 provides in pertinent part: (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * (2) traveling expenses * * * while away from home in the pursuit of a trade or business * * *. ↩
6. If the employment is indefinite, rather than temporary, then the employee's "tax" home is at the job site, and the cost of his meals and lodgings at the job site would note be incurred "while away from home in the pursuit of a trade or business" under 162(a)(2). Commissioner v. Flowers,326 U.S. 465 (1946). If the employee lives a distance from the job site it is a personal decision, unrelated to any business necessity. Frederick v. United States,603 F.2d 1292, 1294-1295↩ (8th Cir. 1979).