DONALD W. RUTHERFORD AND SANDRA S. RUTHERFORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rutherford v. Commissioner
Docket No. 20261-82.
United States Tax Court
T.C. Memo 1983-697; 1983 Tax Ct. Memo LEXIS 95; 47 T.C.M. (CCH) 391; T.C.M. (RIA) 83697; November 23, 1983. E. Massey Watson, for the petitioners. Michael J. Cooper and James A. Kutten for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181. [2] The Court agrees with and adopts his opinion which is set forth below. *96 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $1,267.00. After a concession by petitioners, the sole issue for decision is whether petitioners are entitled under section 162(a) to deduct petitioner-husband's costs of traveling between his residence and place of work. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Ashland, Missouri, when their petition in this case was filed. Petitioner Donald W. Rutherford (petitioner) has been employed as a lineman and an electrician. During the year in issue, he was a member of Local No. 2, International Brotherhood of Electrical Workers, St. Louis, Missouri. Petitioner was employed by Daniel International Corporation (Daniel) as an electrician at the Callaway Nuclear Power Plant projects (Callaway). Callaway is a major project being built by Union Electric Company (UEC). The site was located near Fulton, Missouri, approximately 47 miles from petitioners' residence in Ashland, *97 Missouri. Petitioner was first employed by Daniel on May 1, 1979. On July 26, 1979, petitioner was laid off pursuant to a "reduction of force" for about three weeks. On August 16, 1979, petitioner was rehired by Daniel and has continued in Daniel's employ through the time of trial. The original plan for Callaway was to build two nuclear powered generating units (Units 1 and 2). Daniel was the general contractor for the entire project, with the exception of the main cooling tower. Construction of Callaway began in late 1975 with ground breaking and site preparation work. At that time, Unit 1 was scheduled to be completed by October 1981 and Unit 2 by April 1983. Due to a number of unforeseen problems, the estimated completion dates were extended on several occasions. In 1978 the estimated completion date was October 1982 for Unit 1 and April 1987 for Unit 2. These revisions were generally made public by UEC through various press releases and news conferences. In 1981, plans for the construction of Unit 2 were cancelled. This had no effect on Unit 1's estimated completion date. At the time of trial, construction on Unit 1 had not been completed. A referendum, "Proposition *98 11", was defeated in Missouri on November 4, 1980. If successful, the referendum would have prevented the operation of a nuclear power plant within Missouri until a permanent disposal site for radioactive waste could be approved by the Federal government. Even if the proposition passed, UEC intended to continue construction at Callaway. The proposition had no effect on the construction of Unit 1 or on the estimated completion date of Unit 1. Electricians at the Callaway project were hired by Daniel pursuant to the terms of an agreement with Local No. 257, International Brotherhood of Electrical Workers (union). Due to the tremedous demand, the union was unable to supply the required number of electricians for the Callaway project from its own membership. As a result, workers, such as petitioner, were supplied from other local unions. The decision to lay off a particular electrician due to a reduction of force at Callaway was solely within the discretion of Daniel. Petitioner never was given any indication of how long employment would be available. When petitioner was rehired by Daniel on August 16, 1979, Unit 1 was less than 40 percent complete and did not reach near that *99 stage of completion until about November 5, 1979. A worker, such as petitioner, was required to attend an orientation lecture about Callaway each time he was hired by Daniel. During the lecture, the worker was informed of the then estimated time of completion. During 1980, Daniel had a substantial need for electricians. Electricians were needed to work in buildings for which Daniel was responsible throughout the construction of Callaway. This work was not seasonal in nature. A person in petitioner's craft could reasonably expect to remain employed for as long as work remained available and he maintained a good work record. Although the number of electricians at Callaway fluctuated in 1980, [3] the prospects for continued employment for a good worker were substantial throughout 1980. The number of electricians employed by Daniel during 1980 ranged between 309 and 577, and during 1981 were in the 400 to 525 range except for one week when employment dropped *100 to 364 due to snow. None of these fluctuations in the upper ranges of total employment affected petitioner's employment nor his prospects of employment. Petitioner has been continuously employed by Daniel for more than three years despite the fluctuations in the total employment figures. Daniel was obviously satisfied with his performance. Petitioner was in the group of Daniel employees at Callaway who could expect to remain employed throughout 1980. He was so employed throughout 1980 and was still working for Daniel at the time of trial. Petitioners claimed an adjustment to income on their 1980 return for employee business expenses in the amount of $3,776.00. There is no dispute that this amount represents the costs incurred by petitioner in commuting by automobile between his residence and the Callaway site. Respondent disallowed the claimed adjustment in full. OPINION The essential facts herein do not differ from those in Van Horn v. Commissioner,T.C. Memo. 1983-693, [4] issued on the same day this opinion was issued, although there are some differences in the detail. The most significant difference is that petitioner was hired on August 16, 1979 after *101 a three-week lay off from a job lasting only three months. Whatever his status was when petitioner began working for Daniel at Callaway, there is no question but that by January 1, 1980, his prospects for continued employment for an indefinite period were excellent. Frederick v. United States,603 F.2d 1292 (8th Cir. 1979); Norwood v. Commissioner,66 T.C. 467 (1976); Kroll v. Commissioner,49 T.C. 557 (1968). We are satisfied for the reasons set forth in Van Horn v. Commissioner,supra, that petitioner's employment during 1980 was indefinite, and not temporary. Accordingly, respondent's disallowance of the claimed automobile expense must be sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year in issue, unless otherwise indicated. All references to a Rule are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that Rule are not applicable in this case.
3. Fluctuations were the result of various factors such as voluntary quits, no-shows, firing due to violation of project rules, reductions in force due to the needs of the employer, and work stoppages by other crafts.↩
4. The instant case was consolidated for trial with that case and three other cases with respect to common witnesses.↩