DAVID W. NULSEN AND BEVERLY J. NULSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nulsen v. Commissioner
Docket No. 25781-82.
United States Tax Court
T.C. Memo 1984-307; 1984 Tax Ct. Memo LEXIS 364; 48 T.C.M. (CCH) 297; T.C.M. (RIA) 84307; June 19, 1984. David W. Nulsen, for the petitioners. Douglas W. Hinds, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: *365 Respondent determined deficiencies in petitioners' income tax in the amount of $61 for the calendar year 1979, and $1,387 for the calendar year 1980. After concessions, the sole issue for our decision is whether petitioner David W. Nulsen's employment at the Callaway Nuclear Power Plant construction site (hereinafter "Callaway") was temporary or of indefinite duration. If we find that such employment was temporary, petitioners may deduct the claimed cost of daily transportation in these two years between their home and the Callaway job site [1] under section 162. [2]
FINDINGS OF FACT Some of the facts have been *366 stipulated, and such facts, together with attached exhibits, are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioners, husband and wife, were residents of Eolia, Missouri. Their joint Federal income tax returns for the years 1979 and 1980 were filed on the calendar year and cash basis. During the years here in issue, petitioners resided in Pleasant Hill, Illinois. Union Electric Company of St. Louis, Missouri, is an electric utility company which, in the years before us, was constructing the Callaway Nuclear Power Plant near Fulton, Missouri. Daniel International Corporation (hereinafter "Daniel") was the general contractor for the job at Callaway. Delcon Corporation, a subsidiary of Daniel, was also employed on the Callaway job. Construction of Callaway began in late 1975 and, as originally conceived, the project was to consist of two separate and independent nuclear power generating units, Unit 1 and Unit 2. During the years here in issue, Union Electric Company estimated the completion date of Unit 1 to be October 1982; in 1979 it estimated the completion date of Unit 2 to be April 1987, but revised this estimate of *367 completion to April 1988 during 1980. Union Electric canceled Unit 2 in October 1981, but this had no effect on the construction of Unit 1, which continued. The estimated completion dates for the project were publicly announced and were given considerable publicity in the press. Callaway was a "union job," and the employment of construction workers was the subject of collective bargaining between the relevant trade unions and Daniel. With respect to the employment of electricians on the Callaway job, the collective bargaining agreement between Daniel and the International Brotherhood of Electrical Workers (hereinafter "IBEW") provided that all electricians needed on the Callaway job would be hired through Local 257 of IBEW, located at Jefferson City, Missouri. After determining what its needs for electricians were, Daniel notified the IBEW Local, which supplied the necessary manpower from rosters of job applicants maintained at the IBEW Local office. With respect to hiring practices, prospective electrician-employees were placed in one of four categories and were hired in the following order: A. Book 1 employees were local electricians who belonged to IBEW Local 257. *368 B. Book 2 employees were journeymen linemen who came from other IBEW Locals elsewhere in the United States. C. Book 3 employees were union members who were ground hands, linemen, or one of various other classifications. D. Book 4 employees were nonunion electricians with appropriate experience who would be hired if no union electrician was available. Once employed by Daniel at Callaway, an electrician could be discharged only for cause, through a reduction in force, or by voluntarily quitting. If a reduction in force was determined by Daniel to be necessary, Book 4 employees would be laid off first; there were no considerations of seniority. The master employment agreement specifically excluded the payment of living allowance, travel pay, or subsistence pay to construction workers covered by the agreement. From November 20, 1979, through January 6, 1981, the number of electricians employed by Daniel at Callaway varied somewhat, but generally the trend was upward. On a weekly basis during this period the fewest number of electricians employed was 288, and the highest number was 577. Throughout the period 1979 through 1982, nonunion and well as union electricians were *369 employed, indicating the inability of IBEW to satisfy Daniel's requirements entirely from union labor. Petitioner David W. Nulsen (hereinafter "petitioner") a nonunion electrician with prior experience, was employed at Callaway from November 26, 1979, to April 9, 1982, with one 22-day period of unemployment in 1980, when petitioner was laid off in a reduction in force due to a strike at Callaway by two other craft unions. The principal area at Callaway in which petitioner worked was the turbine building, as to which Union Electric and Daniel had jointly estimated a completion date of late 1982. Neither at the time of his employment nor at any other time was petitioner told by his employer or by the union that his employment was for any definite or fixed period of time. Because of the large amount of electrical work required at a nuclear power generating station such as Callaway, and because electrical work would continue until the final completion of the job, there were reasonable prospects for long-term employment of electricians at Callaway in 1979 and 1980. The electricians' work at Callaway was not seasonal in nature. During the time of his employment at Callaway, petitioner *370 lived at Pleasant Hill, Illinois, and commuted to and from the job at Callaway by automobile, a distance of 102 miles each way, and was not reimbursed for his expenses in this regard. During this time, he sought (apparently unsuccessfully) employment as an electrician at other locations closer to his home at Pleasant Hill. In 1981, while working at Callaway, petitioner purchased and moved to a farm in Eolia, Missouri, and began farming there, while simultaneously continuing to hold his job at Callaway. He left his job at Callaway on April 9, 1982, ceased working as an electrician, and has since engaged in farming and road construction work. Petitioner's decision not to move his residence and his family from Pleasant Hill, Illinois, to a location closer to Callaway in 1979 and 1980 was a personal one, and was based on his perception of the uncertain length of his employment as an electrician at Callaway. In his 1979 and 1980 joint returns, petitioner claimed deductions for his expenses for travel between his home and the Callaway job site in the respective amounts of $580 and $6,078.12. Upon audit, respondent disallowed said deductions on the ground that petitioner's employment *371 at Callaway was not temporary, but was of indefinite duration. From November 26, 1979, through December 30, 1980, petitioner's principal place of employment was at Callaway, in Fulton, Missouri. During this period, his employment at Callaway was permanent or indefinite rather than temporary. OPINION Although we have held that automobile expenses in commuting between the taxpayer's residence and even a temporary job site outside a taxpayer's normal area of employment are not deductible, see Turner v. Commissioner,56 T.C. 27 (1971), vacated and remanded on respondent's motion by unpublished order (2d Cir. March 21, 1972); McCallister v. Commissioner,70 T.C. 505 (1978), that issue has not been presented to us in this case. Instead, resondent takes the position that if petitioner's employment is temporary, his transportation expenses between his home and his job site is deductible.[3] We therefore limit our consideration to the "temporary" versus "indefinite" issue. Since we agree with the respondent that petitioner's employment at Callaway was not temporary and therefore his transportation expenses are not deductible, any conflict with Turner v. Commissioner,supra *372 is mooted. McCallister v. Commissioner,supra.
Section 162(a)(2) allows a deduction for traveling expenses, including meals and lodging, if incurred by the taxpayer in *373 connection with a trade or business and while "away from home." A taxpayer's "home" for purposes of section 162(a) is the vicinity of his principal place of employment. Commissioner v. Stidger,386 U.S. 287 (1967). However, resondent has recognized, and this and other courts have applied the rule, that where a taxpayer who has a principal place of employment goes elsewhere to work on a "temporary" basis, his home for purposes of section 162(a) remains in the vicinity of his prior place of employment. McCallister v. Commissioner,supra.Temporary employment for purposes of applying this rule has been defined as the kind of employment that can be expected to last for only a short period of time. Norwood v. Commissioner,66 T.C. 467, 469 (1976); Albert v. Commissioner,13 T.C. 129, 131 (1949); McCallister v. Commissioner,supra.On the other hand, employment is indefinite if its termination within a "fixed or reasonably short period of time" cannot be foreseen. Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). Whether a *374 taxpayer's employment is temporary or indefinite, within the meaning of section 162, is a mixed question of fact and law which must be resolved by applying the correct legal standard to the facts of the individual case. Among the many cases in this and other courts which have considered this question, we are guided here particularly by the cases of Cockrell v. Commissioner,321 F.2d 504 (8th Cir. 1963), affg. 38 T.C. 470 (1962), and Frederick v. United States,603 F.2d 1292 (8th Cir. 1979). [4]
We consider the standards announced in those two cases to be substantially the same as those applied in this Court. In Cockrell v. Commissioner,supra at 507, the Court of Appeals announced the applicable test as follows: Where it appears probable that a taxpayer's employment outside the area of his regular abode will be for a "temporary" or "short" period of time, then his travel expenses are held to be deductible; conversely, if the prospects are that his work will continue for an "indefinite" or "intermediate" or "substantially *375 long" period, then the deduction is disallowed. In Frederick v. United States,supra, a case in which the Eighth Circuit affirmed the finding of a district court that the taxpayer's employment in question was temporary rather than indefinite, the Court considered again its language in Cockrell and said (603 F.2d at 1296): Cockrell demands that a court investigate the taxpayer's prospects of continued employment. In other words, a court must evaluate those facts available to a taxpayer at a point in time and determine, in light of those facts, whether future employment was for a temporary or indefinite period. Applying these tests, we conclude that respondent's determination must be sustained, and that petitioner's employment at Callaway was indefinite rather than temporary in nature. In arriving at this conclusion, we take into account the following factors which are supported by the record: A. The Callaway job was a major project which in the years 1979 and 1980 had a number of years to go prior to completion. B. The work required a large number of electricians throughout the term of the project and right down to its completion. *376 During the years here in question the number of electricians employed by Daniel, although varying somewhat from week to week, was generally on the increase. C. Although the collective bargaining agreement between Daniel and IBEW required preference in hiring to be given to union members, and further required that, in the event of a reduction in force, the nonunion electricians would be laid off first, nevertheless the testimony in this case was that nonunion electricians were employed continuously at Callaway, many for long periods of time, evidencing the inability of IBEW to supply all of Daniel's requirements through exclusively union labor. D. Once hired, even a nonunion electrician could only be fired for cause, by reduction in force or by voluntarily quitting. The work was not seasonal in nature, and in fact the only interruption to petitioner's employment during the whole time he was at Callaway was a period of about three weeks when he was laid off due to a reduction in force resulting from a work stoppage by other craft unions at Callaway. E. No representations were made to petitioner as to the limited nature of his employment, and, given the size and scope of the *377 Callaway project, it was reasonable to anticipate that, once hired, even a nonunion man like petitioner could expect employment for a long period of time. Clearly, every construction job will terminate sooner or later, and there will frequently be some hazard of temporary layoffs, e.g. from strikes, shortage of materials, etc., but such factors do not make employment temporary. Frederick v. United States,supra;Abbott v. Commissioner,T.C. Memo. 1981-424. Petitioner argues that since he did not know how long his job at Callaway would last, it was unreasonable to expect him to uproot his family and move it closer to the job site. This, however, is a personal decision, based on the taxpayer's own particular living conditions, and is not a proper grounds for upholding the deduction here in question. Frederick v. United States,supra;Kasun v. United States,671 F.2d 1059 (7th Cir. 1982). This Court has had occasion previously to consider the situation of construction workers at the Callaway job with regard to their commuting and living expenses. See Van Horn v. Commissioner,T.C. Memo. 1983-693. *378 [5] As we said in Van Horn:
As the Eighth Circuit said in Frederick v. United States,supra at 1295: "The relevant fact is the taxpayer's prospects for continued employment." Applying that test here, we find that by the beginning of 1980 petitioner's prospects for continued employment at Callaway for an indefinite period were excellent. Given the magnitude of the project and the demand for workers with petitioner's skills, it would have been unreasonable for petitioner to have concluded otherwise. In sum, we find this case indistinguishable in all material respects from Van Horn,supra, and the same result is indicated. Respondent's determination is accordingly sustained. Decision will be entered for respondent.
Footnotes
1. On brief, respondent has stated that the only issue for decision is whether petitioner's employment was temporary or indefinite, and thus apparently concedes that if the Court finds that the employment of petitioner David W. Nulsen was temporary, then he should be allowed the deductions claimed for transportation expenses under sec. 162(a). ↩
2. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Rules of Practice and Procedure of the Tax Court, unless otherwise stated.↩
3. In making this concession, respondent is apparently attempting to put himself in compliance with section 2 of Pub. L. 95-427, 92 Stat. 996, as amended by Pub. L. 96-167, section 2, 93 Stat. 1275 (effective October 7, 1978), which provides as follows: Section 2. Commuting Expenses With respect to transportation costs paid or incurred after December 31, 1976 and on or before May 31, 1981, the application of sections 62, 162, and 262 and of Chapters 21, 23, and 24 of the Internal Revenue Code of 1954 to transportation expenses in traveling between a taxpayer's residence and place of work shall be determined - (1) without regard to Revenue Ruling 76-453 (and without regard to any other regulation, ruling, or decision reaching the same result as, or a result similar to, the result set forth in such Revenue Ruling); and (2) with full regard to the rules in effect before Revenue Ruling 76-453. See also Rev. Rul. 190, 1953-2 C.B. 303↩.
4. An appeal in the instant case would lie to the Court of Appeals for the Eighth Circuit.↩
5. See also Myers v. Commissioner,T.C. Memo. 1983-696; Rutherford v. Commissioner,T.C. Memo. 1983-697; Kostos v. Commissioner,T.C. Memo. 1983-698; and Schurwan v. Commissioner,T.C. Memo. 1983-699↩.