Nester and LaVain M. ELLWEIN, Appellants,

v.

UNITED STATES of America, Appellee.

Nester and LaVain M. ELLWEIN, Appellees,

v.

UNITED STATES of America, Appellant.

Nos. 84–1854, 84–1891.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1985.

Decided Dec. 5, 1985.

Garry A. Pearson, Grand Forks, N.D., for appellants.

Raymond Hepper, Washington, D.C., for appellee.

Before BRIGHT and HENLEY, Senior Circuit Judges, and ROSS, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Nester Ellwein[1] appeals from a decision of the district court[2] disallowing deduc-

---

1. LaVain Ellwein also joins this appeal because she and Ellwein filed a joint 1979 tax return.

2. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota. The district court's opinion is reported at 577 F.Supp. 1368 (1983).

tions claimed as expenses incurred "away from home," under 26 U.S.C. § 162(a)(2) (1982). The court's ruling rested on its finding that Ellwein's tax home for the relevant tax year, 1979, was in Pick City, North Dakota, rather than Lakota, North Dakota, as Ellwein contended. The Government cross-appeals from the court's ruling permitting Ellwein to deduct transportation costs he incurred between Pick City and his 1979 work locations under 26 U.S.C. § 162(a) (1982). The Government argues that the court erred in not denying such deductions as commuting expenses. We affirm on Ellwein's appeal. On the Government's cross-appeal, we reverse as to deductions for travel expenses during the first half of 1979 and remand for further consideration of the allowed travel expenses for the second half of that year.

## I. BACKGROUND.

In 1970, Ellwein and his family purchased a residence in Lakota, North Dakota. Ellwein obtained employment in Nekoma, North Dakota, and commuted there from Lakota each workday. His wife worked in Lakota, and his children attended school there.

In 1973, Ellwein lost his job in Nekoma. He then obtained employment as a boilermaker with Chicago Bridge & Iron through the boilermakers' union in Minneapolis, Minnesota. The union refers its members for employment through the "ladder" system. Under this system, Ellwein placed his name at the bottom of a list of members needing employment. When his name rose to the top, he was referred to the first job available for someone with his qualifications. That job could have been anywhere within the union's jurisdiction, which covers North Dakota, Minnesota, and Iowa. If he had refused the offered employment, his name would have gone back to the bottom of the ladder.

Ellwein's employment with Chicago Bridge lasted until 1978, during which time Ellwein was sent to jobsites in North Dakota, Minnesota, and Iowa. After his termination in the fall of 1978, Ellwein once again applied to his union, and was referred for a job at the Coal Creek plant near Falkirk, North Dakota.

Shortly after obtaining the job at Coal Creek, Ellwein moved a trailer home he owned from Lakota to Pick City, North Dakota, a location about twenty-five miles from the Coal Creek plant. His family stayed in Lakota, where his wife worked and his children continued their schooling. One son graduated in 1978, and gained employment near Beulah, North Dakota in the summer of 1979. At this time, he moved into the trailer home in Pick City with his father. In 1980, Ellwein's daughter also obtained employment in Beulah, and moved into the trailer.

Ellwein worked at the Coal Creek plant until June 1979, approximately seven months. After a one-week layoff, Ellwein obtained a job through the union ladder at the Coyotte plant, which is thirty-nine miles from Pick City, near Beulah, North Dakota. He worked there for six weeks, until illness forced him to resign. In late fall of 1979, he recovered from his illness, and obtained a job at the Antelope Valley plant, which is forty-five miles from Pick City, also near Beulah.

Each of the three plants at which Ellwein worked during 1979 are coal-generated power plants under construction. At trial, an expert witness for the Government testified that the construction of these plants made the job prospects for boilermakers in the area "quite good" for 1979.

Ellwein worked at the Antelope Valley plant until June 1980, when he quit because of illness. He was sick for over one year. From July 1981 until June 1983, Ellwein worked at a variety of short-term jobs in western North Dakota, but also sustained some months of unemployment during this period. His trailer remained in Pick City, where his daughter continued to stay.

Ellwein drove to Lakota for most weekends during 1979, incurring mileage expenses. He paid rent for his trailer's parking space, electrical bills, water fees, and commuting expenses for driving his car between Pick City and his jobsite each workday. Ellwein ate breakfast and dinner at his trailer, and packed lunch each morning to take to the jobsite. His wife purchased his groceries in Lakota.

Ellwein sought to deduct his travel expenses between Pick City and Lakota, and his workday travel expenses between Pick City and his jobsite on his 1979 tax return. He also claimed deductions for his meal and lodging expenses in Pick City. The Commissioner denied all these deductions, stating in a letter, "The travel expenses you claimed were incurred in a location where you were working for an *indefinite* period. Since that location is your TAX *home*, the expenses incurred are not deductible." (Emphasis supplied.)

Ellwein paid the taxes assessed for 1979, filed a claim for refund with the IRS, and, after more than six weeks passed without response, brought suit in district court pursuant to sections 6532 and 7422 of the Internal Revenue Code of 1954. 26 U.S.C. §§ 6532(a)(1), 7422(a) (1982). The district court held, after a non-jury trial, that Ellwein's job prospects for 1979 in the Pick City area were indefinite, and that Ellwein's tax home had therefore shifted from Lakota to Pick City. The court consequently disallowed Ellwein's claimed deductions for the costs of his meals and lodging in Pick City, and for his weekend travel between Pick City and Lakota, because such expenses were not incurred "away from home" as required by 26 U.S.C. § 162(a)(2). Ellwein appeals from this ruling. The court further held, however, that Ellwein's job prospects were temporary at each of his three 1979 jobs, and that Ellwein's costs of traveling between Pick City and the various jobs became deductible as "ordinary and necessary" expenses of "carrying on a trade or business" under 26 U.S.C. § 162(a). The Government cross-appeals from this ruling.

## II. DISCUSSION.

### A. Expenses Incurred "Away From Home".

In most cases, a taxpayer's costs of meals, lodging, and traveling are considered personal expenses, and therefore non-deductible under 26 U.S.C. § 262. *See also* Treas.Reg. § 1.262–1(b)(5). Section 162(a)(2), however, permits deduction of such expenses if they were incurred "away from home in the pursuit of business." By allowing taxpayers to deduct living expenses while "away from home," section 162(a)(2) "mitigate[s] the burden of the taxpayer[s] who, because of the exigencies of [their] trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." *Ronald D. Kroll*, 49 T.C. 557, 562 (1968).

■ This court defines "home" within section 162(a)(2)'s "away from home" requirement as the taxpayer's principal place of business. *Weiberg v. Commissioner*, 639 F.2d 434, 437 (8th Cir.1981). Therefore, "[w]hen a taxpayer who maintains a residence in the vicinity of [the taxpayer's] principal place of employment is required to travel to a different location for temporary work, [the taxpayer] is considered to be 'away from home.'" *Deamer v. Commissioner*, 752 F.2d 337, 339 (8th Cir.1985) (quoting *Michel v. Commissioner*, 629 F.2d 1071, 1073 (5th Cir.1980)). The taxpayer's employment in the new location is temporary if its termination could be reasonably foreseen within a short time.

■ If, on the other hand, the taxpayer's job prospects in the area are likely to result in employment lasting a subtantial or an indefinite period of time, the taxpayer's "home" within section 162(a)(2) shifts to the new location. *See Curtis v. Commissioner*, 449 F.2d 225, 227–28 (5th Cir.1971); *Jenkins v. Commissioner*, 418 F.2d 1292, 1293–94 (8th Cir.1969). The tax home moves regardless of whether the taxpayer maintains a personal or family residence near the former tax home. "'The job, not the taxpayer's pattern of living,' is the

crucial matter." *Cockrell v. Commissioner*, 321 F.2d 504, 507 (8th Cir.1963) (quoting *Carragan v. Commissioner*, 197 F.2d 246, 249 (2d Cir.1952)). Therefore, expenses incurred by the taxpayer at the new employment location are not deductible under section 162(a)(2), because the expenses did not arise when the taxpayer was "away from home."[3]

In this case, the district court concluded that Ellwein's prospects for each job, considered separately, were for temporary employment. On further analysis, the court found, however, that Ellwein's prospects in the area surrounding Pick City were, as a whole, for employment lasting an indefinite or substantial period of time. The court therefore concluded that Ellwein's tax home was in Pick City, and disallowed Ellwein's claimed section 162(a)(2) deductions.

■ Ellwein argues that the court erred, as a matter of law, in considering his cumulative job prospects in the Pick City area. We disagree. Determination of a taxpayer's principal place of business requires consideration of all the taxpayer's job prospects within the employment area. That Ellwein was employed at a variety of jobsites within the Pick City area does not change the indefinite or temporary nature of his employment prospects. *See Curtis*, 449 F.2d at 227–28 (5th Cir.1971). Although disputed, the facts as found by the district court indicated that Ellwein should have expected to remain employed in the area for an indefinite or substantial length

of time. Thus the legal conclusion followed that Ellwein's "home" within section 162(a)(2) shifted to Pick City. As we observed about the temporary or indefinite test in *Frederick v. United States*, 603 F.2d 1292, 1295 (8th Cir.1979), "[t]he relevant fact is the taxpayer's prospects for continued employment."

■ Ellwein also contends that the court erred in finding that his employment prospects in the Pick City area were indefinite, rather than temporary. The issue of whether the taxpayer's prospects for continued employment are temporary or indefinite is a question of fact. *Peurifoy v. Commissioner*, 358 U.S. 59, 60–61, 79 S.Ct. 104, 105–06, 3 L.Ed.2d 30 (1958). The fact finder must objectively determine the length of employment the taxpayer should have foreseen in the new location. *See Dahood v. United States*, 747 F.2d 46, 49 (1st Cir.1984). The taxpayer's home under section 162(a)(2) shifts to the new employment location at that point in time when the facts indicate that the taxpayer should have anticipated indefinite or substantially lengthy employment in the area. *See Ham v. United States*, 408 F.2d 671, 672 (6th Cir.1969).

■ We cannot say that the district court's finding that Ellwein had indefinite job prospects in the Pick City area was clearly erroneous. Testimony at trial indicated that the construction of several pow-

---

**3.** As this court observed in *Frederick v. United States*, 603 F.2d 1292 (8th Cir.1979), considerable confusion surrounds the application of the temporary or indefinite test to the determination of the taxpayer's "home" under section 162(a)(2). *Id.* at 1295 n. 5. The confusion arises primarily from disagreement over whether the test properly establishes the taxpayer's home, or whether it distinguishes between expenses incurred for a business reason, rather than from a personal choice. *See Rosenspan v. United States*, 438 F.2d 905 (2d Cir.), *cert. denied*, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971). *Compare Cockrell*, 321 F.2d at 507 (test indicates tax home), *with Frederick*, 603 F.2d at 1293–95 (test indicates whether expenses were business-related).

The test is equally applicable to both the "away from home" and the "in pursuit of busi-

ness" requirements of section 162(a)(2). Most courts define "home" within the section as the taxpayer's principal place of business, because this interpretation best comports with Congress' intent not to permit business deductions for expenses arising from a taxpayer's personal choice of residence location. The "away from home" and "in pursuit of business" requirements are inextricably intertwined, therefore, and the temporary or indefinite test provides a refinement of both requirements.

The district court applied the temporary or indefinite test to determine the locale of Ellwein's tax home. We therefore examine the test and its application in that context. This analysis could also have proceeded under the "in pursuit of business" requirement, however, with the same end result.

er plants within the vicinity of Pick City meant prospects for indefinite or substantially lengthy employment for boilermakers. in 1979. Moreover, substantial evidence supported the trial court's finding that Ellwein personally expected to be employed near Pick City for a substantially lengthy period of time. Ellwein moved his trailer to Pick City when he obtained a job twenty-five miles away at the Coal Creek plant. Two of his children lived there with him for varying lengths of time. Ellwein also had other family connections in the Pick City vicinity. Further, Ellwein had no business connections in the area of Lakota, his former tax home, and did not attempt to establish such connections by seeking employment in that area. Finally, Ellwein was in fact employed in the Pick City area from 1978 to 1983, a substantially long period of time. "[T]he duration of a taxpayer's actual employment can have considerable probative value in [the fact finder's] difficult assessment [of the taxpayer's employment prospects], which must often entail speculation about conditions in a past tax year." *Dahood*, 747 F.2d at 50.

The district court was confronted with a close question of fact, with evidence pointing in both directions. The burden was on Ellwein to prove by a preponderance of the evidence that his employment prospects in the Pick City area were temporary. *Deamer*, 752 F.2d at 339. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *Perfetti v. Commissioner*, 762 F.2d 638, 640 (8th Cir.1985). Consequently, we hold that the district court's conclusion that Ellwein

failed to carry his burden of proof was not clearly erroneous.

We therefore affirm the district court's finding that Ellwein's tax home was in Pick City, North Dakota, and its disallowance of Ellwein's claimed section 162(a)(2) deductions.

### B. Commuting Expenses.

Based on its finding that each of Ellwein's 1979 jobs was individually temporary, the district court allowed Ellwein's claimed deduction for his workday transportation costs between Pick City and his jobs under 26 U.S.C. § 162(a). The Government contends that the court erred in not considering whether Ellwein's daily commute took him outside his regular area of abode.

Section 162(a) permits a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Commuting expenses are generally considered nondeductible personal expenses under section 262. *Fausner v. Commissioner*, 413 U.S. 838, 839, 93 S.Ct. 2820, 2821, 37 L.Ed.2d 996 (1973); Treas.Reg. § 1.262–1(b)(5). Courts allow deductions for commuting expenses, however, when the expenses are incurred for business purposes under section 162(a).

Courts apply the temporary or indefinite test to determine whether the commuting expenses resulted from the exigencies of the taxpayer's business.[4] *See, e.g., Dahood*, 747 F.2d at 49; *Kasun v. United States*, 671 F.2d 1059, 1061 (7th Cir.1982); *Frederick*, 603 F.2d at 1295. The taxpayer's ability to choose where to reside largely depends on the taxpayer's expected term

**4.** Congress sanctioned the application of this test to deductions for commuting expenses under section 162(a). In Rev.Rul. 53–190, 1953–2 Cum.Bull. 303, 305, the Internal Revenue Service announced that it would permit taxpayers to deduct commuting expenses to temporary jobs. The tax court, however, in *Turner v. Commissioner*, 56 T.C. 27 (1971), rejected the revenue ruling, and held that commuting expenses were nondeductible personal expenses, regardless of the temporary nature of the taxpayer's

employment. Prompted by this decision, the IRS announced the prospective revocation of the revenue ruling. Rev.Rul. 76–453, 1976–2 Cum.Bull. 86. In Pub.L. No. 95–427, 92 Stat. 996 (1978), Congress prohibited the IRS from changing its treatment of expenses incurred in commuting to temporary jobs. *See also* Pub.L. No. 96–167, 93 Stat. 1275, sec. 2 (1979) (extending prohibition time). The IRS has not renewed its decision to disallow the commuting expenses.

of employment. *Frederick,* 603 F.2d at 1295. When the taxpayer should expect employment continuing an indefinite or substantial period of time, the taxpayer can choose to live near the job or to live distant from the employment and incur travel expenses. If the taxpayer chooses the latter, the choice is a personal decision, not compelled by business necessity. *Id.* Conversely, employment expected to last only a short or temporary time may leave the taxpayer with little choice but to live far from work. In this circumstance, the taxpayer incurs the commuting expenses through business necessity, permitting deduction under section 162(a). *Id.*[5]

This rationale holds true only when the taxpayer must commute to a worksite distant from his or her home. "Without such a requirement, the absurd result would obtain of permitting a taxpayer, who commuted to a succession of temporary jobs, to deduct commuting expenses, no matter how close these jobs were to [the taxpayer's] residence." *Dahood,* 747 F.2d at 48. Therefore, commuting expenses are deductible only when "it appears probable that a taxpayer's employment *outside the area of [the taxpayer's] regular abode* will be for a 'temporary' or 'short' period of time." *See Cockrell,* 321 F.2d at 507 (quoting *Wright v. Hartsell,* 305 F.2d 221, 224 (9th Cir.1962) (emphasis added)).

The district court failed to specifically find that each of Ellwein's temporary jobs was so distant from his Pick City residence and tax home that his business deduction for commuting expenses was justified. Although the court's memorandum and order denying the Government's motion to amend the judgment does state that Ellwein's temporary jobsites "were a considerable distance from Pick City," this conclusory statement fails to indicate whether the district court gave appropriate weight to the essential factor of distance, and whether the jobs near Beulah were within the work area of Pick City, that city being the taxpayer's tax home and abode, for tax pur-

poses. We therefore remand for further consideration on this issue.

 On remand, we direct the district court to enter judgment disallowing Ellwein's claimed deduction for his commuting expenses between Pick City and the Coal Creek plant. Ellwein obtained employment at Coal Creek in late 1978. Shortly after he began work there, Ellwein moved his trailer to Pick City, which was approximately twenty-five miles from the plant. We must therefore conclude that the taxpayer located his trailer at Pick City in order to conveniently commute to his job at Coal Creek and that the Coal Creek plant fell within the area of the taxpayer's tax abode at Pick City.

On the issue of whether Ellwein's employment at the Coyotte plant and the Antelope Valley plant, both near Beulah, North Dakota, fell inside or outside the work area of his tax abode at Pick City, the district court may make necessary findings from the record, or permit the parties to present further evidence on this issue.

We therefore affirm on Ellwein's appeal and reverse in part and remand in part the district court's decision permitting Ellwein to deduct his 1979 traveling expenses between Pick City and his jobsites.

---

**5.** This rationale also underlies the application of the temporary or indefinite test to the "in pursuit of business" requirement of section 162(a)(2). *See supra* n. 3 and accompanying text.