T.C. Summary Opinion 2007-76

UNITED STATES TAX COURT

DANIEL P. AND GLENNA J. MARPLE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24329-04S.                    Filed May 21, 2007.

Daniel P. and Glenna J. Marple, pro se.

Jay A. Roberts, for respondent.

POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1] Unless otherwise indicated, subsequent section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $4,800 in petitioners' 2002 Federal income tax. After concessions,[2] the issues are: (1) Whether petitioners are entitled to deduct medical and dental expenses in an amount greater than that allowed by respondent, and (2) whether petitioners are entitled to deduct employee business expenses in amounts greater than those allowed and conceded by respondent.

Background

At all relevant times, including throughout 2002 and at the time they filed their petition, petitioners resided in Burlington, West Virginia (Burlington). As of the date of trial, petitioners had lived in Burlington for approximately 33 years, and their four children lived in the surrounding area.

Petitioner Daniel P. Marple is a sheet metal worker by trade and a member of the Sheet Metal Workers' International Association, Local Union No. 100 (Local 100). The jurisdiction

---

[2] Respondent concedes petitioners are entitled to deduct $11,520 on Schedule C, Profit or Loss From Business, for wages paid in taxable year 2002 and claim a deduction on Schedule A, Itemized Deductions, for 3,304 business miles attributable to petitioner Daniel P. Marple's temporary employment with Eber HVAC, Inc., in taxable year 2002.

Petitioners concede they are not entitled to deduct $419 for Mr. Marple's union dues and assessments, which represents the unsubstantiated portion of the union dues and assessments claimed on Schedule A for taxable year 2002.

of Local 100 includes Washington, D.C., the States of Maryland and Virginia, and seven counties in West Virginia (Berkeley, Grant, Hampshire, Hardy, Jefferson, Mineral, and Morgan).[3] During the relevant period, Mr. Marple procured work through the Local 100 union hall in Cumberland, Maryland (Cumberland),[4] which was located approximately 23 miles from petitioners' residence in Burlington.[5]  Mr. Marple was considered a sheet metal worker traveler by Local 100 and was referred by Local 100 to contractors for nonpermanent employment on jobs involving sheet metal work.  After a job ended, Mr. Marple would report to the Local 100 union hall in Cumberland and sign the out-of-work list for referral to a contractor for employment on another job. Since 1998, Mr. Marple has worked for at least 18 different contractors on Local 100-referred jobs, primarily at locations in West Virginia and the adjacent State of Maryland.  Some of these job locations were closer to petitioners' home area of Burlington

---

[3]  We take judicial notice of the jurisdiction of Local 100 and its area offices.  See Fed. R. Evid. 201(b).

[4]  The Cumberland area office of Local 100 covered the Maryland counties of Allegany, Garrett, and Washington, and the West Virginia counties of Berkeley, Grant, Hampshire, Hardy, Jefferson, Mineral, and Morgan.

[5]  We take judicial notice of the approximate distance between Burlington and the Local 100 union hall in Cumberland. See Fed. R. Evid. 201(b).

or its environs, such as Romney, West Virginia, and Mineral County, West Virginia, and some were further, such as Frederick, Maryland, and Johnstown, Pennsylvania.

In June 2001, Mr. Marple was sent by Local 100 to work for API, Inc. (API) on a job at the Mount Storm Power Station in Mount Storm, West Virginia (Mount Storm job). The Mount Storm job involved installing scrubbers on two of the generating units at the Mount Storm Power Station, and API had contracted to perform the insulation and lagging work. At the time he took the job, Mr. Marple knew that the Mount Storm job was a big project that involved a lot of lagging work.

Petitioner was initially employed by API on the Mount Storm job from June 25, 2001, to October 10, 2001, at which time he was laid off because of a reduction in workforce mandated by API's project schedule. Almost 2 months later, Mr. Marple was referred back to API for the Mount Storm job, and he worked for API on the Mount Storm job from December 3, 2001, until August 22, 2002, at which time he was again laid off by API. Mr. Marple believed this layoff would be the end of his work on the Mount Storm job.

As a result of his layoff from the Mount Storm job, Mr. Marple went to the Local 100 hiring hall in Cumberland and signed the out-of-work list. He was sent by Local 100 to work a job for Eber HVAC, Inc. (Eber), in Johnstown, Pennsylvania (Johnstown). Mr. Marple worked for Eber after his layoff from API on August

22, 2002, until the job ended the week of September 16, 2002. The job at Eber was 118 miles from Mr. Marple's residence in Burlington. Each day that Mr. Marple reported for work at Eber, he drove his personal truck from his residence in Burlington to Eber's office in Johnstown and back to his residence in Burlington after work. Mr. Marple did not spend the night at or near Johnstown at any time during his job with Eber. Mr. Marple did not receive any reimbursement from Eber or Local 100 for his traveling or meal expenses incurred when working for Eber in Johnstown.

After the end of the Eber job, Local 100 referred Mr. Marple back to work for API on the Mount Storm job. Mr. Marple was rehired by API on September 16, 2002, and worked for API on the Mount Storm job until he was again laid off on February 13, 2003. Mr. Marple was not rehired by API for the Mount Storm job after his layoff on February 13, 2003. API's work on the Mount Storm job continued until January 2004.

The Mount Storm job site was located 2 miles west of Bismarck, West Virginia (Bismarck). Each day that Mr. Marple reported for work on the Mount Storm job, he drove his personal truck from his residence in Burlington to the Mount Storm job site and then back to his residence in Burlington after work. Mr. Marple did not spend the night away from his residence at or near the Mount Storm job site when working on the Mount Storm

job.  The distance from Mr. Marple's residence in Burlington to the Mount Storm job site, via the most direct driving route of Burlington to New Creek, West Virginia, to Bismarck, was 32 miles.  Mr. Marple would go to the Mount Storm job site by first driving to Keyser, West Virginia (Keyser), where he would stop at a Sheetz station to buy gas for his truck and breakfast.  The Sheetz in Keyser was not the only gas station available to Mr. Marple; however, he preferred this station to those closer to his home or on the more direct route to the Mount Storm job site because of, among other things, the price of the gas and the quality of the food.  As a result of first driving to the Sheetz in Keyser and then to the Mount Storm job site, Mr. Marple drove 51 miles from his residence in Burlington to the Mount Storm job site on the mornings he reported to work during the year in issue.  Mr. Marple did not receive any reimbursement from API or Local 100 for his travel or meal expenses incurred in working on the Mount Storm job.

For taxable year 2002, Mr. Marple recorded his daily business mileage on a calendar.  On each working day, Mr. Marple wrote down on the calendar the number of miles he drove from his residence to a job site and then back.  Mr. Marple considered himself "out of town", for the purpose of deducting business mileage, at a distance of 45 to 50 miles from his residence in Burlington.

For taxable year 2002, Mr. Marple received taxable wages of $44,606.03 from API.  API paid Mr. Marple weekly and issued him an earnings statement for each weekly pay period.  These earnings statements show that Mr. Marple received gross wages of $45,719.28 from API for 2002 and that he made pretax contributions totaling $1,113.25 for the year to a section 401(k) plan.  The earnings statements also show a total of $5,714.54 listed under "Fringe Benefits" for "H&W" for 2002, which relates to premiums for health insurance.  The $5,714.54 listed for health insurance was not included in the calculation of Mr. Marple's gross wages from API for taxable year 2002, nor did petitioners include this amount in income on their 2002 Form 1040, U.S. Individual Income Tax Return.

For taxable year 2002, Mr. Marple received taxable wages of $2,917.60 from Eber.  Eber also paid Mr. Marple weekly and issued an earnings statement to Mr. Marple for each weekly pay period. Mr. Marple's earnings statements from Eber for taxable year 2002 do not indicate that any amount was allocated to health insurance, nor do the earnings statements indicate that any pretax contributions were made from Mr. Marple's wages.  Mr. Marple's Eber earnings statements list an after-tax deduction each pay period for "Union/%% Deduct".

In taxable year 2002, Mr. Marple purchased work boots and clothes, including blue jeans, for wear in his job as a sheet

metal worker.  These items were normal clothes.  Petitioners introduced copies of 12 receipts totaling $338.58 as substantiation for purchases of these items.  The receipts indicate that the dollar amounts for all of the items purchased are generally small, ranging from a low of 50 cents to a high of $14.99.  The receipts do not provide descriptions of the items purchased or identify the stores from which petitioners purchased the items.

On their 2002 Form 1040, petitioners claimed medical and dental expenses of $8,020 on Schedule A, Itemized Deductions, attached to their return, which resulted in a deduction of $4,963 after application of the limitation in section 213(a).  Of the $8,020 in claimed medical and dental expenses, petitioners calculated $7,100 as paid for health insurance.  Respondent disallowed the entire $8,020 of claimed expenses in the notice of deficiency on the grounds that petitioners had not substantiated payment of the expenses.[6]

Also on Schedule A, petitioners deducted $11,741 as Mr. Marple's unreimbursed job expenses, made up of the following: Vehicle expenses of $8,879 (24,325 business miles at the standard mileage rate of 36-1/2 cents per mile); business meals and entertainment expenses of $399 (after application of the 50-

---

[6]     As noted, petitioners submitted to respondent medical and dental care receipts totaling $920, which respondent has accepted.

percent limitation of section 274(n)); union dues and assessments of $2,113; and work boots and clothing of $350. In the notice of deficiency, respondent allowed a deduction of $1,694 for the substantiated amount of Mr. Marple's union dues and disallowed all of the remaining deductions.[7]

### Discussion

Deductions are a matter of legislative grace, and a taxpayer must establish that he has satisfied the specific statutory requirements for any deduction claimed.[8] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Furthermore, a taxpayer is required to keep records sufficient to enable the Commissioner to determine whether the taxpayer is liable for tax. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. A taxpayer bears the burden of substantiating the amount and purpose of any claimed deduction. See Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

---

[7] As noted, respondent has conceded that petitioners are entitled to a deduction on Schedule A for the 3,304 business miles attributable to Mr. Marple's temporary employment with Eber in 2002.

[8] Sec. 7491(a), which shifts the burden of proof as to factual matters to the Commissioner under certain circumstances, does not apply because petitioners have neither alleged its application nor established that they have satisfied the preconditions for its application.

A.  Medical Care Expenses

As a general rule, section 262(a) prohibits a deduction for "personal, living, or family expenses."  An exception to this general rule is provided by section 213 for certain medical care expenses.  Gerstacker v. Commissioner, 414 F.2d 448, 450 (6th Cir. 1969), revg. and remanding 49 T.C. 522 (1968).  Under section 213(a), a taxpayer may deduct expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, the taxpayer's spouse, or a dependent, to the extent that such expenses exceed 7.5 percent of adjusted gross income.  Expenditures for insurance covering medical care are included in the definition of amounts paid for medical care.  Sec. 213(d)(1)(D).  To substantiate a deduction under section 213, a taxpayer must provide the name and address of each person to whom payment was made and the amount and date of each payment.  Sec. 1.213-1(h), Income Tax Regs.

Petitioners claimed medical and dental expenses of $8,020 on their 2002 Schedule A, and respondent has conceded that petitioners have substantiated $920 of this amount.  Petitioners essentially contend that the remaining $7,100 of their claimed medical and dental expenses represents payments made by Mr. Marple for health insurance through withholding by his

employers.  Petitioners submitted all of Mr. Marple's earnings statements from Eber and API for 2002 to substantiate the payments for health insurance.

Mr. Marple's earnings statements from Eber for 2002 do not indicate that any amounts were paid for health insurance.  Mr. Marple's earnings statements from API for 2002 indicate that a total of $5,714.54 was listed under "Fringe Benefits" for health insurance for the year.  This amount was not included in the calculation of Mr. Marple's gross wages from API for 2002, nor did petitioners include this amount in income on their 2002 Form 1040.  Thus, the $5,714.54 was not paid by Mr. Marple; rather, it appears that API paid that amount for Mr. Marple's health insurance.  A taxpayer may deduct amounts that the taxpayer has paid for himself or his dependent, but not amounts that a third party has paid on the taxpayer's behalf.  See McDermid v. Commissioner, 54 T.C. 1727 (1970).  Petitioners presented no other evidence substantiating any medical care expenses, qualified or otherwise, that would make up the $7,100 portion of the medical and dental expenses claimed on their 2002 Schedule A. We conclude that petitioners are not entitled to deduct the $7,100 at issue as medical care expenses under section 213 for taxable year 2002.

B.    Employee Business Expenses

Section 162(a) allows a taxpayer to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including the trade or business of performing services as an employee.  Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).  As noted, however, section 262 prohibits a deduction for expenses that are personal in nature.  The statutory prohibition of section 262 regarding the deductibility of personal expenses takes precedence over the allowance provision of section 162, Sharon v. Commissioner, 66 T.C. 515, 522-525 (1976), affd. 591 F.2d 1273 (9th Cir. 1978), and a taxpayer must demonstrate that the expenses at issue were different from or in excess of what he would have spent for personal purposes, Sutter v. Commissioner, 21 T.C. 170, 173-174 (1953).[9]

---

[9]   In addition to satisfying the criteria for deductibility under sec. 162, certain categories of expenses, including passenger automobiles, traveling, and meals and entertainment, must also satisfy the strict substantiation requirements of sec. 274(d) before those expenses will be allowed as deductions.  See secs. 274(d), 280F(d)(4)(A)(i).  Under these rules, a taxpayer must substantiate the amount, time, place, and business purpose of the expenditures and must provide adequate records or sufficient evidence to corroborate his own statement.  See sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  In order to meet the "adequate records" requirements, a taxpayer is to maintain an account book, diary, statement of expenses, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence)
(continued...)

1.  Vehicle Expenses

Commuting expenses, which are expenses incurred in traveling between a taxpayer's residence and his or her principal place of business or employment, are generally considered personal expenses, deduction of which is prohibited by section 262.  See Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.  The Commissioner has recognized an exception to this general rule when the daily transportation expenses are incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works.  See Rev. Rul. 99-7, 1999-1 C.B. 361, modifying and superseding Rev. Rul. 90-23, 1990-1 C.B. 28, and Rev. Rul. 94-47, 1994-2 C.B. 18, and obsoleting Rev. Rul. 190, 1953-2 C.B. 303.[10]

---

[9](...continued)
which, when combined, establish each element of the expense that sec. 274(d) requires to be established.  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

[10]    In Turner v. Commissioner, 56 T.C. 27, 33 (1971), vacated and remanded on the Commissioner's motion by an unpublished order (2d Cir., Mar. 21, 1972), this Court disallowed the deduction by an employee of expenses for transportation from the employee's residence to a distant temporary job, holding that "Commuting is commuting, regardless of the nature of the work engaged in, the distance traveled, or the mode of transportation used."  The Commissioner, however, in Rev. Rul. 190, 1953-2 C.B. 303, allowed the deduction of expenses incurred for daily transportation between a taxpayer's principal or regular place of employment and a temporary, as distinguished from indefinite,
(continued...)

Respondent argues that the travel expenses at issue (21,021 of the 24,325 business miles claimed by petitioners on their Schedule A) represent mileage Mr. Marple incurred commuting from his home to the Mount Storm job site and thus are not deductible under section 162.  Respondent further argues that Mr. Marple is not entitled to deduct the mileage at issue pursuant to the exception provided in Rev. Rul. 99-7, supra, because Mr. Marple's employment with API on the Mount Storm job, which lasted for all of 2002 except for a 3-week break in service, was not temporary, nor was the Mount Storm job site, which was 32 miles from Mr. Marple's home by way of the most direct route, outside the metropolitan area where Mr. Marple lived and normally worked.  Petitioners contend otherwise, pointing out that none of Mr. Marple's jobs through Local 100 are permanent, and arguing that, by Mr. Marple's calculation, he drove 51 miles to get to the Mount Storm job site each day.

---

[10](...continued)
job, when the job was outside the metropolitan area where the taxpayer lived and ordinarily worked.  Since Turner, we have decided cases where the issue has been framed in terms of the test of Rev. Rul. 190, supra.  See, e.g., McCallister v. Commissioner, 70 T.C. 505 (1978); Norwood v. Commissioner, 66 T.C. 467 (1976).  Rev. Rul. 190, supra, has been modified or clarified by the Commissioner over the years, as noted above.  For purposes of the instant case, Rev. Rul 99-7, 1999-1 C.B. 361, applies, and the deductibility of Mr. Marple's vehicle expenses has been presented for decision under its provisions.  Neither party disputes the application of Rev. Rul. 99-7, supra.

We recognize that all of Mr. Marple's jobs through Local 100 are not permanent positions and that Mr. Marple understood at the time he took the Mount Storm job that his employment with API would not be permanent in nature. The impermanence of construction work, however, does not resolve the issue of whether Mr. Marple's employment with API was temporary for the purpose of deducting business mileage. See Commissioner v. Peurifoy, 254 F.2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958); Kasun v. United States, 671 F.2d 1059, 1061-1063 (7th Cir. 1982). Moreover, prior jobs of short duration are not evidence that the job at issue is temporary. McCallister v. Commissioner, 70 T.C. 505, 509-510 (1978).

We find it unnecessary, however, to resolve the question of whether Mr. Marple's employment with API on the Mount Storm job was temporary or indefinite because we find that the Mount Storm job site was not outside the metropolitan area where Mr. Marple lived and normally worked. See Harris v. Commissioner, T.C. Memo. 1980-56, affd. in part and remanded in part without published opinion 679 F.2d 898 (9th Cir. 1982).[11]

---

[11] In Harris v. Commissioner, T.C. Memo. 1980-56, affd. in part and remanded in part without published opinion 679 F.2d 898 (9th Cir. 1982), this Court found that the taxpayer, who relied on Rev. Rul. 190, supra, to support the deductibility of his transportation expenses, had not established that the work sites at issue were outside the general area of his principal or
(continued...)

The term "metropolitan area", for purposes of deducting daily transportation expenses under the exception found in Rev. Rul. 99-7, supra, is not defined in that revenue ruling or the prior revenue rulings on the subject.[12] Courts that have addressed the issue have generally looked at whether the work site in question was within the general area of the taxpayer's principal or regular place of employment, see Harris v. Commissioner, supra (for transportation expenses to be deductible, the taxpayer must prove that temporary work sites are outside the general area of the taxpayer's principal or regular place of employment); see also Aldea v. Commissioner, T.C. Memo. 2000-136; Carter v. Commissioner, T.C. Memo. 1988-189, as well as the distance between the work site and the taxpayer's residence, see Ellwein v. United States, 778 F.2d 506, 511-512 (8th Cir. 1985) (daily transportation costs deductible only if the temporary employment is outside the area of the taxpayer's regular abode); Dahood v. United States, 747 F.2d 46, 48 (1st Cir. 1984); Boehmer v. Commissioner, T.C. Memo. 1986-315.

With this background in mind, we believe it is appropriate to interpret "metropolitan area", as that term is used in Rev.

---

[11](...continued)
regular place of employment. We thus found, without deciding whether the jobs were temporary, that the taxpayer was not entitled to deduct the transportation expenses at issue.

[12] Rev. Rul. 94-47, 1994-2 C.B. 18; Rev. Rul. 90-23, 1990-1 C.B. 28; Rev. Rul. 190, supra.

Rul. 99-7, supra, by reference to its ordinary and common meaning.  In Webster's Third New International Dictionary (1993), the word "metropolitan" is defined as "of, relating to, or constituting a region including a city and the densely populated surrounding areas that are socially and economically integrated with it".  In the instant case, Mr. Marple resided in Burlington, and he reported to and received work referrals from Local 100's Cumberland office, which was located approximately 23 miles from his residence.  He primarily worked jobs in West Virginia and Maryland, several of which were within his home area of Burlington and its environs.  Mr. Marple considered himself "out of town" for purposes of deducting business mileage at 45 to 50 miles from his residence in Burlington.  We take this to mean that Mr. Marple considered the area within a 45- to 50-mile radius of Burlington to be his metropolitan area.  No evidence was presented to convince the Court that this area should be expanded or diminished, and we find that Mr. Marple properly regarded this area to be the metropolitan area where he lived and normally worked.  We further find, however, that the Mount Storm job site was not outside this area.  The distance between Mr. Marple's residence in Burlington and the Mount Storm job site, via the most direct route, was 32 miles, and thus the job site was not distant from his residence.  See Harris v. Commissioner, supra (work sites requiring round trips of 134, 162, and 100

miles from the taxpayer's home within the metropolitan area that was the taxpayer's principal or regular place of employment). Ellwein v. United States, 635 F. Supp. 1453 (D.N.D. 1986) (work sites at distances of 39 miles and 45 miles within the work area of the taxpayer's home), on remand from Ellwein v. United States, supra. The extra 19 miles that Mr. Marple calculated he drove each day on his way to the Mount Storm job site were attributable to his choice to buy breakfast and gas at the Sheetz gas station in Keyser. Mr. Marple admitted that this particular Sheetz was not the only gas station available to him, and he further admitted that he drove out of his way to go to this Sheetz each morning because he liked the food and the price of gas at that station. Mr. Marple's decision to drive the extra 19 miles each morning was thus motivated primarily by personal considerations, rather than by any requirement of his employer. See Henry v. Commissioner, 36 T.C. 879, 884 (1961); Sutter v. Commissioner, 21 T.C. at 173-174. We find that the Mount Storm job site was not outside the metropolitan area where Mr. Marple lived and normally worked. Accordingly, we conclude that petitioners are not entitled to deduct business mileage under section 162 in excess of the 3,304 miles conceded by respondent.

2. Meal Expenses

Expenses paid or incurred for a taxpayer's daily meals are generally nondeductible under section 262 as personal, living, or

family expenses.  See <u>United States v. Correll</u>, 389 U.S. 299 (1967); <u>Barry v. Commissioner</u>, 54 T.C. 1210, 1212 (1970), affd. per curiam 435 F.2d 1290 (1st Cir. 1970).  This is so because a taxpayer's expenses for his own meals would have been incurred whether or not the taxpayer had engaged in any business activity. <u>Christey v. United States</u>, 841 F.2d 809, 814 (8th Cir. 1988); <u>Moss v. Commissioner</u>, 80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985).  Meal expenses may be deductible as traveling expenses under section 162(a)(2) if a taxpayer can prove that the meals were consumed while traveling away from home in the pursuit of a trade or business.  To be considered "away from home" within the meaning of section 162(a)(2), a taxpayer must be on a trip that requires the taxpayer to stop for sleep or a substantial period of rest.  <u>United States v. Correll</u>, <u>supra</u>; <u>Strohmaier v. Commissioner</u>, 113 T.C. 106, 115 (1999).

During 2002, Mr. Marple did not stay overnight at either the Mount Storm job site location or the Eber job site location but instead returned in the evenings to petitioners' residence in Burlington.  There is no evidence that Mr. Marple's daily round trips in 2002 between petitioners' residence and the job site locations required Mr. Marple to stop for sleep or a substantial period of rest.  See <u>United States v. Correll</u>, <u>supra</u>; <u>Strohmaier v. Commissioner</u>, <u>supra</u> at 115.  We find that the meal expenses were not paid or incurred while Mr. Marple was away from home

within the meaning of section 162(a)(2).  Accordingly, petitioners are not entitled to deduct the cost of Mr. Marple's meals as a business expense under section 162.[13]

### 3.  Work Clothing

The cost of clothing is generally a nondeductible personal expense within the meaning of section 262, even if the clothing was in fact used exclusively for work.  See Barone v. Commissioner, 85 T.C. 462, 469 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986).  The cost of clothing may be deductible as a business expense under section 162(a) where (1) the clothing is required or essential in the taxpayer's employment, (2) the clothing is not suitable for general or personal wear, and (3) the clothing is not worn for general or personal purposes.  Yeomans v. Commissioner, 30 T.C. 757, 767-768 (1958).

Mr. Marple purchased jeans and work boots during the year in issue which he wore while employed as a sheet metal worker.  Mr. Marple testified the items were "normal" jeans and work boots. There is no evidence that the items were unsuitable for general or personal wear, nor is there evidence that Mr. Marple did not

---

[13]  We note that expenses for meals are subject to strict substantiation under sec. 274, discussed supra note 9. Petitioners did not introduce any receipts or other documentary evidence substantiating Mr. Marple's meal expenses.  Petitioners' failure to meet the substantiation requirements of sec. 274(d) for Mr. Marple's meal expenses would appear to provide an alternative basis for our holding disallowing petitioners' claimed meal expense deduction.

wear the jeans and work boots outside of his employment.  We conclude that petitioners are not entitled to deduct the cost of Mr. Marple's clothing as a business expense under section 162.[14]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[14]  We note in this regard that petitioners claimed a deduction of $350 for Mr. Marple's work clothes on their 2002 Schedule A, but introduced only 12 receipts totaling $338.58 as substantiation for purchases of these work clothes.  Moreover, although Mr. Marple testified the receipts were for purchases of work clothes, the receipts do not provide descriptions of the items purchased or identify the stores where the items were purchased.