T.C. Summary Opinion 2009-97

UNITED STATES TAX COURT

ALEXANDER DOMINIC SENULIS, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11204-07S.                    Filed June 22, 2009.

Alexander Dominic Senulis, Jr., pro se.

<u>Benjamin J. Peeler</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for 2002 of $4,462 together with additions to tax under sections 6651(a)(1) and (2) and 6654(a) for failure to file, failure to pay amount due, and failure to pay estimated income tax of $910.35, $1,011.50, and $133.63, respectively. The issues for decision are: (1) Whether petitioner was temporarily away from home during 2002 and thus entitled to deduct expenses for airfare, automobile, cellular telephone use, computer supplies, Internet service, meals and incidentals (M&IE), and postage; and (2) whether additions to tax are applicable for 2002 for failure to file, failure to pay amount due, and failure to pay estimated income tax under sections 6651(a)(1) and (2) and 6654(a), respectively.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Louisiana when the petition was filed.

Petitioner has a long history of employment in and around Destrehan, Louisiana. He spent approximately 10 years, from 1989 through 1999, working as a self-employed automobile claims field mechanical inspector and manager. Petitioner ended this business

because of physical injuries he had received in an automobile accident. Petitioner then started a business that provided extended warranties for automobiles, where he administered warranty claims. This business terminated in 2001 because the insurance company that petitioner was associated with went into receivership.

Petitioner was then introduced by an associate to Mr. Horn, the owner of Managed Healthcare, Inc. (MHI), a medical insurance administration company in Houston, Texas. MHI had been using multiple redundant systems for the processing of medical claims. MHI wanted to merge these systems into a single coherent system without going through the laborious process of reentering all of the data. Individuals whom Mr. Horn consulted regarding the project advised him that the data had to be reentered, because they questioned the feasibility of using available computer technology to merge the various medical recordkeeping systems. However, petitioner believed that he could merge the systems without reentering the data.

Petitioner was contracted by MHI on a month-to-month basis as an independent contractor. He began to merge the existing systems in January 2002. The project completion date was unknown; however, petitioner estimated that it would take approximately 9 to 10 months to complete. It was understood that, at the latest, petitioner's services would be terminated

when the project was completed; however, because petitioner was contracted month to month, his services could be terminated during any given month. Petitioner was paid $2,000 per month for his services. MHI provided petitioner with a cubicle in which to set up his own computer equipment and supplies. Petitioner was not reimbursed by MHI for any of his expenses. In order to merge the various medical recordkeeping systems into a single coherent system petitioner used AT&T Worldnet Internet service to transfer data between San Antonio, Austin, and Houston.

While working at MHI, petitioner lived with his mother in Pasadena, Texas, a suburb of Houston, to minimize his expenses. Petitioner had his mail forwarded to his mother's house by the U.S. Postal Service because his mail was being returned to sender from his post office box in Louisiana. Petitioner had only a bedroom at his mother's residence and did not maintain any of his computer equipment or business records there.

During this time petitioner continued to maintain a leased townhouse in Destrehan, Louisiana, with his companion, whose surname is not in the record and who hereinafter will be referred to as Ms. M. The Destrehan townhouse was where he maintained his home office, a separate computer, and certain business records. Although the lease was in Ms. M's name, petitioner was listed on the lease as living there. Petitioner has resided at these premises for approximately 20 years, and they became his

principal place of business beginning in 1989. All of the accounts for utility and home telephone services were in petitioner's name, and he paid for these services and all of the rent while he was working. Petitioner also maintained cellular telephone service through Verizon Wireless and used the service for both business and personal use.

The distance from the shared townhouse in Destrehan, Louisiana, to his mother's house in Pasadena, Texas, is approximately 320 miles. During the 13 months that petitioner worked at MHI, he made nine round trips to Destrehan, Louisiana, to research new software and hardware technology, to maintain business records related to his consulting business, to find new clients that might need work similar to the work that petitioner was performing at MHI, and for personal reasons.

In January 2003 the project at MHI "fell apart", and petitioner's employment at MHI terminated. The record is silent as to where petitioner worked and lived during the rest of 2003. In years in which petitioner had income, he filed State of Louisiana income tax returns and his Federal income tax returns using the Destrehan, Louisiana, address.

Because respondent had no record of petitioner's filing a Federal income tax return, respondent prepared a substitute for return using third-party information reported to the IRS for 2002. In computing the Federal income tax deficiency respondent

allowed petitioner a standard deduction of $4,700, one personal exemption of $3,000, and prepaid credits of $416. The income respondent determined is not in dispute. However, petitioner contests the deficiency, alleging that he incurred deductible business expenses in 2002.

## Discussion

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to a deduction. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer is required to maintain records sufficient to establish the amounts of his or her income and deductions. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. Taxpayers may deduct only the business expenses that they can substantiate. Ronnen v. Commissioner, 90 T.C. 74, 102 (1988).

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with its requirements. Petitioner therefore bears the burden of proof. As to the additions to tax, section 7491(c) places the burden of production on respondent. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

I. <u>Business Expenses</u>

    A.  <u>Meals and Incidental, Airfare, and Automobile Expenses</u>

    Petitioner claims that he is entitled to deduct meals and incidental, airfare, and automobile expenses, contending that they were ordinary and necessary business expenses incurred while away from home as a result of the project at MHI.  Respondent contends that petitioner's work outside the area of his Louisiana residence was indefinite, as opposed to temporary.  Respondent argues that petitioner's tax home was in Texas, where he was working indefinitely, and as a result all travel and meals and incidental expenses are nondeductible personal expenses.

    In general, a taxpayer may deduct ordinary and necessary expenses paid or incurred in connection with the operation of a trade or business.  Sec. 162(a); <u>Boyd v. Commissioner</u>, 122 T.C. 305, 313 (2004).  However, section 262 disallows any deduction for personal, living, or family expenses, including meals and travel expenses.  Normally, transportation expenses incurred between one's residence and one's principal place of business (a job site) are referred to as commuting expenses and are nondeductible personal expenses under section 262.  <u>Fausner v. Commissioner</u>, 413 U.S. 838 (1973); <u>Commissioner v. Flowers</u>, 326 U.S. 465 (1946).

    Under an exception to this rule, a taxpayer may deduct meals and travel expenses associated with employment that is temporary,

as opposed to indefinite, in duration when the taxpayer is away from home. Sec. 162(a)(2); Peurifoy v. Commissioner, 358 U.S. 59 (1958). A taxpayer's tax home is generally the area of the taxpayer's principal place of employment. However, a taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary, as opposed to indefinite, and if the taxpayer has a principal place of business in the vicinity of the taxpayer's personal residence. Farran v. Commissioner, T.C. Memo. 2007-151.

In 1992 Congress amended section 162(a) for costs paid or incurred after December 31, 1992, as follows: "For purposes of paragraph (2), the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." Energy Policy Act of 1992, Pub. L. 102-486, sec. 1938(a), 106 Stat. 3033. However, if the employment is initially expected to last for 1 year or less and at some later point the employment is expected to exceed 1 year, then the employment will be treated as temporary until the earlier of when the taxpayer's reasonable expectations change or 1 year. Johnson v. Commissioner, T.C. Memo. 1999-153; Rev. Rul. 93-86, 1993-2 C.B. 71.

To decide the primary issue we must flesh out the definitions that have been assigned to temporary and indefinite employment. "A word is not a crystal, transparent and unchanged,

it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U.S. 418, 425 (1918).

Temporary employment has been defined as that which is forseeably terminable or lasting for a relatively short, fixed duration. Boone v. United States, 482 F.2d 417, 419 (5th Cir. 1973). When a taxpayer reasonably expects to be employed for a short or temporary period and travels a long distance from his personal residence to the place of employment, the reasonable inference is that the taxpayer's choice of residence is dictated by business necessity. Frederick v. United States, 603 F.2d 1292, 1295 (8th Cir. 1979).

Indefinite employment is employment where the prospect is that the work will continue for an indeterminate and substantially long period. Boone v. United States, supra at 419 (citing Cockrell v. Commissioner, 321 F.2d 504 (8th Cir. 1963), affg. 38 T.C. 470 (1962), and Wright v. Hartsell, 305 F.2d 221 (9th Cir. 1962)). When a taxpayer reasonably expects to be employed in a location for a substantial or indefinite period of time, the reasonable inference is that the taxpayer's choice of residence is a personal decision, unrelated to any business necessity. Frederick v. United States, supra at 1294-1295. Another relevant consideration is the taxpayer's prospects for

continued employment away from the taxpayer's personal residence. Id. at 1295.

We must examine the facts available to the taxpayer when he began the project to determine whether the employment was for a temporary or an indefinite period. Id. at 1296 (citing Peurifoy v. Commissioner, supra, and Tucker v. Commissioner, 55 T.C. 783, 786 (1971)).

The following facts demonstrate that petitioner's assignment was temporary. Before 2002 petitioner had maintained a personal residence, the rented townhouse, in Louisiana for at least 20 years and had a lengthy history of employment in Louisiana. Petitioner left Louisiana for the purpose of working on a project in Houston, Texas, that no other party had been willing to undertake. Petitioner was contracted on a month-to-month basis to perform services for MHI on a project that was estimated to last less than a year, if technologically feasible. Presumably, the purpose of this arrangement was to allow MHI the flexibility to abandon the project if it chose to do so, because the technological feasibility of the project was questionable.

When petitioner accepted the employment he expected the project to last for approximately 9 to 10 months, but because of technological delays the project ultimately lasted for 13 months. Petitioner had no prospects for continued employment with MHI in Texas, following the completion or termination of the project.

Because of petitioner's expectation that the project would last for less than 12 months, and in an effort to reduce expenses, he decided to live in a bedroom at his mother's house in Texas.

Petitioner continued to maintain his home office, computer, and business records in Louisiana and periodically returned to Louisiana for the purpose of researching new hardware and software technology, maintaining business expense records, and attempting to develop his client base and business contacts, as well for as personal reasons. Petitioner also paid many of the bills relating to the Louisiana townhouse that he shared with Ms. M. When petitioner undertook the project he intended to return to Louisiana after the completion of the project in order to perform the same type of work for similarly situated clients.

In summary, even though the project ultimately lasted for 13 months, we believe that at the time he undertook the project petitioner had a reasonable expectation that the project would last for less than 12 months and that the exigencies of business necessitated that he maintain his personal residence in Louisiana. Therefore, on the basis of the relevant facts and circumstances, we find that petitioner's self-employment with MHI was temporary for 12 months, January through December 2002, and that during this period petitioner's tax home remained in Destrehan, Louisiana.

We have determined that petitioner's self-employment was temporary and petitioner's tax home was Destrehan, Louisiana. Petitioner must also show that the expenses were reasonable and necessary and incurred in the pursuit of a trade or business. See sec. 162(a)(2); Commissioner v. Flowers, 326 U.S. at 470. To be "ordinary" the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). Additionally, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs.

Petitioner's travel expenses were necessitated by the fact that he continued to maintain his home office, computer, and business records in Louisiana and periodically returned to Louisiana, primarily for the purpose of researching new hardware and software technology, performing administrative functions relating to his business, and attempting to develop his client base and business contacts. Petitioner's meals and incidental expenses were necessitated by the fact that he was required to be away from his tax home because of a period of temporary employment. On the basis of the relevant facts, we find that petitioner's expenses for travel and meals and incidentals were ordinary and necessary and directly connected with his business.

However, petitioner must also adequately substantiate his expenses. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must nonetheless present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

With respect to travel and M&IE, taxpayers must maintain an account book, diary, log, statement of expenses, or other similar record that provides the following information: (1) The amount of the expense; (2) the time and place that the expense was incurred; and (3) the business purpose of the expense. See sec. 274(d). However, pursuant to Rev. Proc. 2001-47, 2001-2 C.B. 332, and Rev. Proc. 2002-63, 2002-2 C.B. 691, a self-employed taxpayer may use a Federal per diem M&IE rate in lieu of substantiation for purposes of section 1.274-5, Income Tax Regs., if the taxpayer substantiates the time, place, and business purpose of each day or partial day of travel for which M&IE is claimed. A taxpayer who is unable to meet the adequate records standard may be able to substantiate these expenses with his own

statements containing specific details of each element in conjunction with other corroborative evidence of each element. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Additionally, pursuant to Rev. Proc. 2001-47, sec. 6.04, 2001-2 C.B. at 337, and Rev. Proc. 2002-63, sec. 6.04, 2002-2 C.B. at 698, for partial days of travel away from home, a taxpayer is allowed to establish a plan such as claiming 75 percent of the Federal per diem M&IE rate, in accordance with the Federal Travel Regulations.

Many of petitioner's tax records were lost or damaged as a result of Hurricane Katrina and the aftermath. Nevertheless, petitioner provided a thorough and credible reconstruction of his expenses and a calendar based on receipts. These documents show that petitioner was in Houston, Texas, for 313 days; traveling between Houston, Texas, and Destrehan, Louisiana, for 18 days; and in Destrehan, Louisiana, for 34 days during the 2002 tax year. Therefore, petitioner was away from his tax home primarily for business purposes for a total of 331 days and is entitled to a deduction for travel and meals and incidentals expenses.

To reflect a change in the per diem rate during 2002 we separate the year into two parts. For January 1 through September 30, 2002, petitioner was away from his tax home for 245 days: 231 full days and 14 partial days. The Federal per diem

M&IE rate for Houston, Texas, during this period was $42. See 41 C.F.R. ch. 301 app. A (2002). Therefore, petitioner's meals and incidental expense for this period is $10,143. For October 1 through December 31, 2002, petitioner was away from his tax home for 86 days: 82 full days and 4 partial days. The Federal per diem M&IE rate for Houston, Texas, during this period was $46. See 41 C.F.R. ch. 301 app. A (2003). Therefore, petitioner's meals and incidental expense for this period is $3,910.

In summary petitioner's total meals and incidental expense for 2002 was $14,053. Petitioner is entitled to a deduction for M&IE equal to 50 percent of the $14,053 or $7,026.50. See sec. 274(n) (allowing a deduction of 50 percent for meal expenses).

With respect to airfare expenses, petitioner traveled by commercial aircraft to Destrehan, Louisiana, on February 2, March 8, May 31, and June 28, 2002. Petitioner returned to Houston, Texas, by airplane on February 11, March 12, June 4, and July 2, 2002. Petitioner has substantiated this travel through the use of a calendar and receipts totaling $607. Therefore, petitioner is entitled to a deduction for this air travel of $607.

Regarding vehicle expenses petitioner traveled by automobile to Destrehan, Louisiana, on April 19, August 1, September 13, October 1, and November 2, 2002. Petitioner returned to Houston, Texas, by automobile on April 24, August 6, September 17, October 6, and November 4, 2002. Petitioner has substantiated this

travel through the use of credit card statements that show his whereabouts during the applicable travel periods. Petitioner also provided a Mapquest map which shows a roundtrip distance of 657 miles and a Yahoo map which shows a roundtrip distance of 658 miles. Petitioner has requested mileage based on a roundtrip distance of 656 miles and is entitled to a deduction for mileage based on this lesser amount. The applicable Federal mileage rate during the 2002 tax year was $0.365 per mile. Petitioner made a total of five trips, traveling 656 miles per trip, which yields a total of 3,280 miles traveled. Therefore, petitioner is entitled to an automobile expense deduction of $1,197.20.

B. Cellular Telephone Expense

Section 274(d) applies to the use of "listed property" as defined in section 280F(d)(4), which includes cellular telephones. To deduct these types of expenses, the taxpayer must provide evidence that through adequate records corroborates the taxpayer's testimony as to: (1) The amount of the expenditure or use; and (2) the business relationship of the taxpayer to each expenditure or use. Sec. 274(d). To satisfy the adequate records requirement of section 274, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Although a contemporaneous log is not

required, corroborative evidence to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Petitioner produced billing statements from January through September 2002 showing the amounts that he paid for the cellular telephone service to substantiate this expense. We find that cellular telephone service would be an ordinary and necessary business expense in petitioner's line of work because petitioner was essentially on call 24 hours per day, 7 days per week. However, petitioner conceded that he also used the cellular telephone to call Ms. M. when he was in Texas. Petitioner has failed to meet the strict substantiation requirements of section 274(d) in that he did not substantiate the business use of the cellular telephone. Therefore, petitioner is not entitled to a deduction for cellular telephone expense.

C. Computer Supplies

At the MHI locations in Texas petitioner maintained several computers that he owned. These computers were vital to performing the work necessary to complete the project. While petitioner was contracted to work at MHI, he purchased miscellaneous computer supplies. We find that computer supplies

are an ordinary and necessary business expense in petitioner's line of work because he could not have successfully performed his job without them. Petitioner submitted receipts to substantiate total computer supplies of $1,117.91, and therefore he is entitled to a deduction for this amount.

### D. Postage Expense

Petitioner submitted a receipt to substantiate $6.80 in postage expenses; however, petitioner has failed to establish why this would be an ordinary and necessary business expense in his line of work. Therefore, petitioner is not entitled to a deduction for postage expenses.

### E. Internet Expense

The goal of the project at MHI was to merge data from multiple information systems into a single coherent database. This necessitated that data be transferred by some means. Petitioner used the Internet to transfer data between various locations in Texas. Petitioner originally obtained Internet service through BellSouth, but because of a billing issue he changed his service provider to AT&T Worldnet Service. The Internet service account was in petitioner's name, and he submitted billing and credit card statements to substantiate total Internet expense of $256.40. Petitioner is entitled to a deduction of $256.40 for Internet expenses.

II.  Additions to Tax Under Sections 6651(a)(1) and (2) and 6654(a)

A.  Section 6651(a)(1)--Failure To File, and Section 6651(a)(2)--Failure To Pay

Petitioner requested an extension of time to file his 2002 Federal income tax return and submitted a payment of $387 with his extension request on April 15, 2003; however, petitioner does not know whether he filed a 2002 Federal income tax return.  At trial petitioner failed to produce a copy of his Federal income tax return for 2002.

Certified transcripts of petitioner's tax account show that he did not file a 2002 Federal income tax return and that a substitute for return was prepared by the IRS and processed on September 12, 2005.  The substitute for return prepared under section 6020(b) is disregarded for purposes of section 6651(a)(1) but treated as a return for purposes of section 6651(a)(2).  See sec. 6651(g).

Respondent determined additions to tax under section 6651(a)(1) and (2).  Respondent bears the burden of production under section 7491(c).  The certified official transcript for 2002 produced by respondent establishes that petitioner did not file a return for 2002.  See Davis v. Commissioner, 115 T.C. 35, 40-41 (2000).  Furthermore, petitioner has not demonstrated reasonable cause for failing to file his 2002 income tax return and failing to pay his 2002 income tax liability in full by the

appropriate date. Therefore, these additions to tax are sustained.

B. <u>Section 6654(a)--Failure To Pay Estimated Income Tax</u>

The IRS also determined an addition to tax under section 6654(a) for failure to pay estimated income tax. The Commissioner has the burden of production under section 7491(c) to show, in accordance with section 6654(d), that the taxpayer had a tax liability for the preceding taxable year. <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 211 (2006), affd. 521 F.3d 1289 (10th Cir. 2008). Respondent failed to produce any evidence reflecting that petitioner had an income tax liability in 2001. Additionally, petitioner unequivocally stated that he did not have any income in 2001. Because petitioner did not have a tax liability for 2001, he was not required to make estimated income tax payments for 2002. See sec. 6654(e)(2). Therefore, petitioner is not liable for the section 6654(a) addition to tax.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.